**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

NICOLE DEIDUN, ELLIOT GORLIN, KELLY JEWELL, NANCY MACINTYRE, and MARY PAYNE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

HUMANA, INC.,

Defendant.

Case No. 3:26-CV-00054-GNS

**DEFENDANT HUMANA INC.'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND MEMORANDUM IN SUPPORT THEREOF**

March 23, 2026

KAPLAN JOHNSON ABATE & BIRD LLC
Michael P. Abate (KY Bar No. 95259)
mabate@kaplanjohnsonlaw.com
710 West Main Street, 4th Floor
Louisville, KY 40202
Telephone: (502) 540-8280
*Attorneys for Defendant Humana Inc.*

SEYFARTH SHAW LLP
Kathleen C. Tranter (KY Bar No. 95316)
ktranter@seyfarth.com
Kristine R. Argentine (pro hac vice forthcoming)
kargentine@seyfarth.com
Paul Yovanic, Jr. (pro hac vice forthcoming)
pyovanic@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
*Attorneys for Defendant Humana Inc.*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. ALLEGATIONS OF PLAINTIFFS' CLASS ACTION COMPLAINT ........ 2

III. ARGUMENT: PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. ........ 5

A. Legal Standard ........ 5

B. Plaintiffs Have Failed to State a Claim for Violation of the FWA. ........ 6

1. The FWA ........ 6

2. Plaintiffs Have Failed to Allege the Interception of the Content of their Communications. ........ 7

3. Humana was a Party to the Alleged Communications and Plaintiffs Have Failed to Allege Facts Sufficient to Invoke the Crime-Tort Exception. ........ 9

a. Plaintiffs Have Not Alleged that Humana Disclosed their Individually Identifiable Health Information. ........ 10

i. Plaintiffs have not alleged what of their own information was allegedly intercepted. ........ 11

ii. Plaintiffs have further failed to allege that any of the information transferred to third-party vendors is related to any Plaintiff's health. ........ 14

iii. Plaintiffs have not alleged that any of the data intercepted by third parties was identifiable. ........ 16

b. Plaintiffs Have Not Alleged that Humana Engaged in a Crime or Tort Independent from the Act of Interception Itself. ........ 18

c. Plaintiffs Have Not Alleged that Humana Intercepted their Data for an Illegal or Tortious Purpose. ........ 20

C. Plaintiffs Have Failed to State a Claim for Breach of Fiduciary Duty. ........ 22

D. Plaintiffs Have Failed to State a Claim for Intrusion Upon Seclusion. ........ 22

E. Plaintiffs Have Failed to State a Claim for Unjust Enrichment. ........ 24

IV. CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................11, 15, 17

*B.K. v. Eisenhower Medical Center*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................25

*B.N. v. Oregon Reproductive Medicine, LLC*,
2025 WL 3165965 (D. Ore. Nov. 12, 2025)....................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................6

*Beltran v. Drs. Med. Ctr. of Modesto*,
2025 WL 1635467 (E.D. Cal. June 9, 2025) ....................9

*Bishop v. Lucent Techs., Inc.*,
520 F.3d 516 (6th Cir. 2008) ....................2, 6

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................18, 19, 20

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)....................23

*Doe v. Genesis Health System*,
2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)....................20, 22

*Doe v. Kaiser Foundation Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. April 11, 2024)....................19, 22

*Doe v. Talkiatry Management Services, LLC*,
--- F. Supp. 3d ----, 2026 WL 206483 (C.D. Cal. 2026)....................21

*Doe v. Upperline Health, Inc.*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) ....................13

*Fritz v. Charter Twp. of Comstock*,
592 F.3d 718 (6th Cir. 2010) ....................6

*Furlong Dev. Co., LLC v. Georgetown–Scott Cnty. Planning and Zoning Comm.*,
504 S.W.3d 34 (Ky. 2016)....................24

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015)....18

*Goulart v. Cape Cod Healthcare, Inc.*,
2025 WL 1745732 (D. Mass. June 24, 2025)....20, 22

*Griffith v. TikTok, Inc.*,
2024 WL 4308813 (C.D. Cal. Sept. 9, 2024)....17

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023)....7

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)....8

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Ill. Aug. 20, 2025)....12, 13, 17, 25

*Harms v. Chase Home Fin., LLC*,
552 S.W.3d 516 (Ky. Ct. App. 2018)....24

*Hartley v. University of Chicago Medical Center*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023)....23

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024)....9

*J.C. v. Catholic Health System Inc.*,
2024 WL 5136236 (W.D.N.Y. Aug. 29, 2024)....13

*Katz-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)....22

*King v. Hard Rock Cafe International (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025)....9

*Kurowski v. Rush System for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023)....9, 16, 23

*Martinez v. Mentavi, Inc.*,
2025 WL 3780427 (W.D. Mich. Oct. 9, 2025)....18, 20, 21

*In re Meta Pixel Healthcare Litigation*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....21

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)....8

*Murphy v. Thomas Jefferson University Hospitals, Inc.*,
2023 WL 7017734 (E.D. Pa. Oct. 10, 2023)....9

*Nguyen v. Abbott Laboratories, Inc.*,
2025 WL 2299753 (N.D. Ill. Aug. 8, 2025) ....12

*Nguyen v. Abbott Laboratories, Inc.*,
2026 WL 579206 (N.D. Ill. Mar. 2, 2026)....15

*In re Nickelodeon Consumer Privacy Litigation*,
827 F.3d 262 (3d Cir. 2016)....17

*Nienaber v. Overlake Hospital Medical Center*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ....19

*Nienaber v. Overlake Hospital Medical Center*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....12, 15, 19, 24

*Okash v. Essentia Health*,
2024 WL 1285779 (D. Minn. Mar. 26, 2024) ....19

*Pearce v. Whitenack*,
440 S.W.3d 392 (Ky. 2014)....22

*Rand v. Eyemart Express, LLC*,
2025 WL 1519726 (N.D. Tex. May 27, 2025) ....15, 16, 23

*Rodriguez v. FastMed Urgent Care,*
741 F. Supp. 3d 352 (E.D.N.C. 2024) ....22

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) ....22

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)....25

*Santoro v. Tower Health*,
2024 WL 1773371 (E.D. Pa. April 24, 2024)....11, 12, 23

*Scheid v. Fanny Farmer Candy Shops, Inc.*,
859 F.2d 434 (6th Cir. 1988) ....5

*Smith v. Facebook, Inc.,*
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ....14

*Sussman v. American Broadcasting Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ....18

*Wright v. TrueCare Property Holdings, LLC*,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) .....11

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .....8

*In re Zynga Privacy Litigation*,
750 F.3d 1098 (9th Cir. 2014) .....7

**Statutes**

18 U.S.C.A. § 2510(8) .....7

18 U.S.C.A. § 2511(1)(a) .....6

18 U.S.C.A. § 2511(2)(d) .....7, 9

18 U.S.C.A. § 2520(a) .....6

42 U.S.C.A. § 1320d-6(a) .....10

**Other Authorities**

45 C.F.R. § 160.103 .....10, 14, 16

45 CFR § 164.502(3) .....10

Fed. R. Civ. P. 12(b)(6) .....5, 6

*Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html .....15

## I. INTRODUCTION

The present case is only the latest of many filed by plaintiffs claiming that the use of website analytics tools constitutes illegal wiretapping. Plaintiffs here allege that Humana's use of tracking technologies on its websites that resulted in the transmission of metadata to third-party vendors violates the Federal Wiretap Act ("FWA"); constitutes a breach of fiduciary duty; constitutes an intrusion upon seclusion; and resulted in the unjust enrichment of Humana. But Plaintiffs have failed to allege sufficient facts to plausibly state any claim against Humana.

First, Plaintiffs have not alleged that the "content" of their alleged "communications" with the websites was intercepted and so do not state a claim under the FWA. Further, because the FWA is a single-party consent statute and because Humana consented to the interception of the alleged "communications" by its third-party vendors, Plaintiffs' claims under that statute are barred. While Plaintiffs attempt to plead around Humana's consent by invoking the "crime-tort" exception to the single-party consent rule, this attempt must fail because Plaintiffs (1) fail to plead the interception of HIPAA-protected information at all, let alone specific to *their* protected health information; (2) fail to allege that Humana committed a crime or tort independent of the claimed interception itself; and (3) fail to allege that Humana used tracking technologies for the specific purpose of exposing their information in violation of HIPAA.

Further, because Plaintiffs' breach of fiduciary duty claim relies entirely upon Humana's "fiduciary duty to maintain the confidentiality and privacy of Plaintiffs' PHI," the fact that Plaintiffs have failed to allege the disclosure of any protected health information is fatal to this claim.

Plaintiffs' claim for intrusion upon seclusion must be dismissed for the similar reason that, in the absence of any allegations that Plaintiffs' protected health information was disclosed, they can claim no privacy interest in their routine internet browsing data. Plaintiffs also cannot claim

that Humana "intruded" upon their private communications when Humana was the intended recipient of those communications.

Finally, Plaintiffs have not stated a claim for unjust enrichment because they have not alleged any facts in support of their claim that they suffered any detriment as a result of the collection of their routine browsing data. Plaintiffs' Class Action Complaint, therefore, must be dismissed in its entirety.

## II. ALLEGATIONS OF PLAINTIFFS' CLASS ACTION COMPLAINT[1]

Plaintiffs allege that Humana used third-party code to imbed certain tracking technologies on its websites—including on the public-facing *www.humana.com* website and the *MyHumana Portal* (the "portal")—which resulted in the "dissemination" of certain information to the third-party providers of the tracking technologies, including Coveo Solutions, Inc. (Coveo), Tealium, Inc. (Tealium), Adobe, Inc. (Adobe), ForeSee/Verint Systems, Inc. (ForeSee), and Quantum Metric, Inc. (Quantum Metric). (Dkt. 1, ¶¶ 4, 8-11.) Plaintiffs generally allege that these tracking technologies intercept users' "keystrokes (text entered into a search box or information box), web addresses (i.e., 'URLs') of individual pages visited, mouse movements, clicks, and/or other electronic communications in real time" and that the intercepted data is "instantly" transmitted to the third-party providers. (Dkt. 1, ¶¶ 11, 17.) Plaintiffs allege that these third-parties can use the intercepted information "to create and/or bolster advertising profiles of insureds, to target or retarget advertisements to insureds, and/or to sell information about insureds to other entities for commercial gain" and that Humana "benefits financially" by obtaining and analyzing this data which allows it to target individuals with advertising campaigns (although Plaintiffs themselves never allege that they were served with any targeted advertisements). (Dkt. 1, ¶¶ 13, 19.)

---

[1] At this stage, the Court must accept all well-pled factual allegations as true. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

Plaintiffs deem all such metadata regarding visitors' use of Humana's websites to be "personal health data," yet allege no facts in support of this conclusion. Plaintiffs allege, for instance, that "Coveo is embedded in Humana's patient portal and tracks insureds in real time." (Dkt. 1, ¶ 209.) Plaintiffs include a screenshot of the "request" that Coveo's server allegedly makes when a user types "Ozempic" into the prescription subpage on the portal but, tellingly, nothing in the screenshot indicates the name or identity of the user or the word "Ozempic" (or anything else about the user's health):




(Dkt. 1, ¶ 210.) While Plaintiffs claim that "information about the insured's sensitive drug search is intercepted" by Coveo, such a claim is contradicted by their own factual allegation showing that nothing about the substance of the request is, in fact, communicated. (Dkt. 1, ¶ 211.)

And on it goes: Plaintiffs provide screenshot after screenshot of hypothetical online transfers of allegedly sensitive data that consist only of metadata and indecipherable strings of alphanumeric characters, none of which contain any identifying information, such as name, email address, telephone number, etc. (*See* Dkt. 1, ¶¶ 218, 220, 222, 225, 247, 253, 260, 313, 315, 343, 348, 350, 352, 364, 366, 369.) Even in the rare instance where Plaintiffs allege that a search term typed into a search bar was transferred to Adobe, that search term ("ozempic") is buried on the twenty-fourth line of a URL that is twenty-six lines long and there is no identifying information shown anywhere in the alleged transfer of data:

▾ General

Request URL
https://smetrics.humana.com/b/ss/humanainctemp/1/JS-2.27.0/s22437124674938?AQB=1&ndh=1&pf=1&t=16%2F9%2F2025%2014%3A33%3A14%204%20300&sdid=31544C5807F203F0-1FF1EC4051993044&mid=29682918877422254642264730793016204126&aamlh=7&ce=UTF-8&cdp=2&pageName=member%20portal%3A%20dashboard&g=https%3A%2F%2Fmy2.humana.com%2Fdashboard&cc=USD&ch=members&server=my2.humana.com&c1=member%20portal%3A%20dashboard&v1=member%20portal%3A%20dashboard&c2=14&c3=4&c4=33&c5=10&c6=2025&c7=16&c8=dashboard&c10=mary%27s%20coverage&v10=0199e3bd1d82001939e86d8d942e0506f001706700bd0&c12=member_portal%3A_dashboard&v13=1760641840885&c14=10_16_2025&v14=false&c15=14%3A33%3A14&v15=false&c16=0805010007&v16=0805010007&c17=english&v17=english&c18=n&v18=n&c19=member%20portal&v19=member%20portal&c20=members&v20=members&c21=520&c22=9446&v23=my2.humana.com&v24=external&v26=false&c27=member_portal%3A_dashboard&v28=0&c34=drug_name_dropdown&c35=popular%20searches%20ozempic&c36=secondary%20cta&c38=button&c44=1343_link153&v44=1343_link153&v47=false&c51=therapy&c52=24&c54=0&c60=my2.humana.com%2Fdashboard&v60=my2.humana.com%2Fdashboard&c61=my2.navlink.new%7Cmy2.renewal.a%7Cmy2.003.25.c%7Cpcp_change_eligible%7Caww_pcp_variation%7Ccol_compliant%7Cbcs_compliant&v61=my2.navlink.new%7Cmy2.renewal.a%7Cmy2.003.25.c%7Cpcp_change_eligible%7Caww_pcp_variation%7Ccol_compliant%7Cbcs_compliant&c71=2025-10-16t14%3A33%3A14&v71=2025-10-16t14%3A33%3A14&c73=%2Fdashboard&v73=%2Fdashboard&c74=https%3A%2F%2Fmy2.humana.com%2Fdashboard&v74=https%3A%2F%2Fmy2.humana.com%2Fdashboard&c75=29682918877422254642264730793016204126&v75=29682918877422254642264730793016204126&pe=lnk_o&pev2=popular%20searches%20ozempic&s=1536x960&c=24&j=1.6&v=N&k=Y&bw=767&bh=826&mcorgid=EFA02CAD546E88360A4C98C6%40AdobeOrg&lrt=42&AQE=1

Request Method: GET

Status Code: 200 OK

Remote Address: 63.140.39.114:443

Referrer Policy: strict-origin-when-cross-origin

(Dkt. 1, ¶ 232; *see also* ¶¶ 234-237.)

While Plaintiffs claim that users *can* log into the portal to "review care and claims, manage prescriptions, and even complete mental health assessments" (dkt. 1, ¶ 8) and that Humana "receives, stores, and uses Medicare beneficiary data, including diagnoses, claims information, and prescription histories" (dkt. 1, ¶ 34), none of the Plaintiffs claim he or she ever used a Humana website to access any of this information, let alone that such information was transferred to a third party. As it relates to their own browsing activity on Humana's websites, each Plaintiff alleges only that he or she regularly or routinely visits Humana's website or portal but provides no facts regarding what data was allegedly transferred to any third party as a result of their use of the

website or portal.[2] (*Id.*) And, none of the Plaintiffs allege specifically what he or she typed in, clicked on, or looked up on any specific website.

Based on these sparse facts, Plaintiffs purport to represent a nationwide class of all Humana insureds "whose Website Communications were wiretapped and intercepted via the code embedded on Defendant's Website." (Dkt. 1, ¶ 39.) They allege that Humana's use of tracking technologies on its websites constitutes the illegal interception of the contents of their electronic communications in violation of the FWA and that the simultaneous "disclosure" of certain metadata regarding their use of Humana's websites to third-party vendors constitutes the illegal disclosure of protected health information under the HIPAA privacy rules. (Dkt. 1, ¶¶ 389-398.) Plaintiffs also assert claims against Humana for breach of fiduciary duty, common law intrusion upon seclusion, and unjust enrichment all based on the same facts: Humana's alleged interception and use of their browsing data. (Dkt. 1, ¶¶ 399-427.)

## III. ARGUMENT: PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

### *A. Legal Standard*

"A Rule 12(b)(6) motion tests whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim

[2] Plaintiff Deidun alleges simply that she "regularly visits the website." (Dkt. 1, ¶ 41.) Plaintiff Gorlin alleges that he uses the website to "search for providers, find medical care, and access his patient portal" (it is not clear if he is referring to the public-facing website, the portal, or both). (Dkt. 1, ¶ 42.) Plaintiff Jewell alleges that she "routinely accessed the MyHumana portal" and that she "regularly visited the Website and portals to manage [her husband's] care as well." (Dkt. 1, ¶ 43.) Plaintiff MacIntyre alleges that she "accessed Defendant's Website regularly to perform tasks related to managing her health." (Dkt. 1, ¶ 44.) And Plaintiff Payne alleges that she "used Defendant's Website regularly, including to manage her prescriptions." (Dkt. 1, ¶ 45.)

plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *citing Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "The reviewing court must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop*, 520 F.3d at 519. "However, a legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz*, 592 F.3d at 722 (internal citations omitted).

"[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. . . . Even under Rule 12(b)(6), a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *Bishop*, 520 F.3d at 519. "[P]laintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

### *B. Plaintiffs Have Failed to State a Claim for Violation of the FWA.*

#### 1. The FWA

Under the FWA, it is a crime for "any person [to] . . . intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . ." 18 U.S.C.A. § 2511(1)(a). The FWA also creates a private right of action for those whose communications are intercepted in violation of the Act. 18 U.S.C.A. § 2520(a). "To state a claim under the relevant provisions of [the FWA], Plaintiffs must allege that Defendant: (1) intentionally (2) intercepted, endeavored to intercept or procured another person to

intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *B.N. v. Oregon Reproductive Medicine, LLC*, 2025 WL 3165965, *2 (D. Ore. Nov. 12, 2025). However, the FWA is a one-party consent statute, meaning that it is not unlawful for a party to intercept an electronic communication "where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C.A. § 2511(2)(d). While an exception to the one-party consent provision exists when "such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State," such exception is inapplicable here, as explained more fully below. *Id*.

**2. Plaintiffs Have Failed to Allege the Interception of the Content of their Communications.**

Plaintiffs' FWA claim should be dismissed because Plaintiffs have failed to plausibly allege that the ***content*** of any of their claimed communications with the Humana websites was intercepted by any third-party tracking technologies.

Under the FWA, the "contents" of an electronic communication means "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C.A. § 2510(8). The relevant distinction is between "a person's intended message to another" (which is content) and "record information," such as name, address, or "subscriber number or identity" (which is not). *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106 (9th Cir. 2014). In the context of internet tracking technologies, the line between content and record information is somewhat blurred, although courts tend to draw it between basic URLs indicating the address of the webpage one visited (record information), and more detailed URLs that reproduce "a user's request to a search engine for specific information" (which may be content). *Id*. at 1107-1109; *see also In re Grp.*

*Health Plan Litig.*, 709 F. Supp. 3d 707, 718 (D. Minn. 2023); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092-93 (N.D. Cal. 2022).

Here, Plaintiffs have alleged literally nothing with respect to what they "communicated" on any Humana website or what information was sent to a third party and so they have failed to allege any facts plausibly suggesting that the contents of their communications were intercepted. As described above, Plaintiffs merely allege that they used the Humana websites. (Dkt. 1, ¶¶ 41-45.) Plaintiffs do not allege, for instance, how (or whether) they searched the website; what (if anything) they typed in to any text field; what buttons they clicked; or what materials they viewed. Plaintiffs allege, generically, that the tracking technologies in question <u>*can*</u> intercept "keystrokes (text entered into a search box or information box), web addresses (i.e., "URLs") of individual pages visited, mouse movements, clicks, and/or other electronic communications"[3] (dkt. 1, ¶ 11), but without alleging what information was intercepted as a result of *their* interactions on the websites or how the tracking technologies were configured to capture information *on any page they visited*, these allegations are woefully insufficient. For example, while Plaintiffs allege that search terms could be captured on certain webpages (*see, e.g.*, dkt. 1, ¶¶ 232-237), none of the Plaintiffs allege that he or she used those pages or typed in any search terms.

Plaintiffs' conclusory allegations that the tracking technologies intercepted the contents of their communications need not be taken as true without specific allegations as to what was

[3] Much of this information is merely record information and not content, anyway. *Hammerling*, 615 F. Supp. 3d at 1092–93 ("URLs are record information when they only reveal a general webpage address and basic identification information."); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (finding that "keystrokes, mouse clicks, pages viewed" and computer and device information were not "contents" of a communication under the California Invasion of Privacy Act); *Mikulsky v. Bloomingdale's, LLC,* 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("button clicks, mouse movements, scrolling, . . . page navigation," etc. are not "content" under the California Invasion of Privacy Act).

allegedly captured: "To provide [the defendant] with sufficient notice of its alleged misconduct, Plaintiffs must offer more detailed descriptions of the communications and information that they assert were intercepted." *Murphy v. Thomas Jefferson University Hospitals, Inc.*, 2023 WL 7017734, *3 (E.D. Pa. Oct. 10, 2023) (dismissing the plaintiff's FWA claim); *see also King v. Hard Rock Cafe International (USA), Inc.*, 2025 WL 1635419, *4 (E.D. Cal. June 9, 2025) (dismissing the plaintiff's California Invasion of Privacy Act[4] claim because "Plaintiff's [complaint] is devoid of any allegation describing her search queries" that tracking technologies allegedly intercepted); *Beltran v. Drs. Med. Ctr. of Modesto*, 2025 WL 1635467, *11 (E.D. Cal. June 9, 2025) (similar). Because Plaintiffs fail to allege any facts supporting their claim that Humana intercepted the content of their communications with the Humana websites, they have not plausibly alleged the "contents" element of their FWA claim.

### 3. Humana was a Party to the Alleged Communications and Plaintiffs Have Failed to Allege Facts Sufficient to Invoke the Crime-Tort Exception.

Plaintiffs' FWA claim must also be dismissed for the basic reason that Humana was a party to the claimed communications and consented to the use of tracking technologies on its websites. Again, under the FWA, it is not unlawful for a party to intercept an electronic communication "where such person is a party to the communication or where one of the parties to the communication has given prior consent . . . ." 18 U.S.C.A. § 2511(2)(d). There can be no question that Humana, as the alleged owner of the websites, was a party to the alleged communications and that it consented to the use of tracking technologies by installing the necessary code to implement them. *See Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023) (*Kurowski II*).

---

[4] "[The California Invasion of Privacy Act] borrows the definition of protected 'contents' from the federal Wiretap Act." *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1123, n.9 (C.D. Cal. 2024).

Plaintiffs attempt to plead around Humana's consent, however, by affirmatively alleging that the "crime-tort" exception applies because "Defendant committed a federal crime of 'knowingly' disclosing 'individually identifiable health information' to third parties" and "because Defendant committed torts as outlined herein, like intrusion upon seclusion." (Dkt. 1, ¶¶ 395-396.) But Plaintiffs have not pled facts sufficient to invoke the crime-tort exception. And if the crime-tort exception does not apply, Plaintiffs' FWA claim is barred by Humana's consent to the alleged interception.

#### ***a. Plaintiffs Have Not Alleged that Humana Disclosed their Individually Identifiable Health Information.***

Plaintiffs allege that Humana is a covered entity under HIPAA and that it is, therefore, bound to comply with HIPAA's privacy rule. (*See* dkt. 1, ¶¶ 24-26.) And under HIPAA, covered entities generally may not "knowingly . . . disclose[] individually identifiable health information to another person," with certain exceptions.[5] 42 U.S.C.A. § 1320d-6 (a). "Individually identifiable health information" (IIHI) is defined under HIPAA as:

> a subset of health information . . . [that] (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) That identifies the individual; or (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

45 C.F.R. § 160.103. If the information allegedly intercepted by tracking technologies on Humana's websites does not meet this definition of IIHI, however, then Humana could not have

[5] One such exception being that covered entities are permitted to disclose protected information to its business associates under a written business associate contract, such as those contracts between Humana and the third-party vendors named in Plaintiffs' Complaint. 45 CFR § 164.502 (3). If Plaintiffs' Complaint survives dismissal, Humana will seek summary disposition on the grounds that, even if there was a disclosure of IIHI, there was no violation of HIPAA because Humana had business associate contracts in place with the third-party vendors in question.

violated HIPAA and the crime-tort exception would not apply. *See Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 794 (N.D. Tex. 2024) ("If the Proscribed Combination isn't IIHI, the Privacy Rule doesn't apply.").

**i. <u>Plaintiffs have not alleged what of their own information was allegedly intercepted.</u>**

Plaintiffs' primary failure is that they have made no attempt to demonstrate that *their own activity* on any Humana website resulted in the transfer of any IIHI or other personal information. In their 115-page Complaint, Plaintiffs devote a single page to describing their own activities on the Humana websites: one paragraph for each of the five Plaintiffs. (Dkt. 1, ¶¶ 41-45.) As discussed above, Plaintiffs' allegations about their own interactions range in specificity from "[s]he regularly visits the Website" (dkt. 1, ¶41) to "he routinely accessed Defendant's Website to search for providers, find medical care, and access his patient portal" (dkt. 1, ¶ 42), but no Plaintiff describes what he or she actually did on the website or what specific information he or she shared in any "communications" with Humana. Without knowing what any particular Plaintiff typed in, looked at, or searched for, there is no way to discern whether any Plaintiff shared anything that might meet the definition of IIHI. If the viability of Plaintiffs' claims depends on the transfer of IIHI, then they must allege facts to support their claim that *their* IIHI was transferred. *See Wright v. TrueCare Property Holdings, LLC*, 2025 WL 3248749, *2 (S.D. Cal. Nov. 21, 2025) ("Conclusory or hypothetical explanations of how the Meta Pixel could track sensitive information on a healthcare website, without factual allegations plausibly showing that Plaintiff's own actionable PHI was tracked, are insufficient to survive a motion to dismiss where PHI is required."). It is not enough for Plaintiffs to allege that some hypothetical user's protected information could be transferred. *See Santoro v. Tower Health*, 2024 WL 1773371, *4 (E.D. Pa. April 24, 2024) ("It is

interesting to hypothesize about different circumstances that could get the theory into discovery, but the law requires more than hypotheticals at the pleading stage.”).

Where, as here, the Plaintiffs allege only the general types of communications they engaged in on the website (such as “searching for providers”) without making any attempt to describe what specific information was actually transferred to a third party, Plaintiffs fail to plausibly allege that IIHI was intercepted. For instance, in *Nienaber I*, although the plaintiff alleged that she “used [d]efendant’s Website ‘numerous times’ since 2019 to ‘request and schedule appointments, communicate with healthcare professionals, complete medical forms, and request and review healthcare and billing records,’” she could not invoke the crime-tort exception to the FWA based on an alleged HIPAA violation where she failed to allege what specific information she allegedly communicated to the defendant through its portal website. *Nienaber v. Overlake Hospital Medical Center*, 733 F. Supp. 3d 1072, 1083 (W.D. Wash. 2024). Similarly, in *Santoro v. Tower Health*, the court dismissed the plaintiff’s FWA claim where the plaintiff alleged only that he “used Tower Health’s website to engage in communications . . . about his past, present, or future health conditions” and to request “information about specific health conditions, treatments, and medications,” because the plaintiff failed to allege anything “about the specific pages Mr. Santoro clicked on, his medical condition, or his history of medical care with Tower Health,” such that the court could not “determine what information Mr. Santoro actually communicated to Tower Health via his web browsing, and thus [could not] tell whether that information might be covered by HIPAA.” 2024 WL 1773371 at *4.[6]

[6] *See also Hannant v. Culbertson,* 2025 WL 2413894, *5 (C.D. Ill. Aug. 20, 2025) (plaintiff’s allegations that she “used the Website and Online Platforms to: find a specific physician, to research treatments, including information related to an MRI test, to search for treatment information; to find out how to obtain medical records; to use the patient portal, and more” were insufficiently detailed to allege the disclosure of IIHI); *Nguyen v. Abbott Laboratories, Inc.,* 2025

Here, even the few Plaintiffs that allege any detail beyond just that they "regularly visited" the websites still assert only that they used the Humana websites for certain types of communications and say nothing about what specific information they communicated to Humana or in what form. For the Court to evaluate whether there is any plausible basis for Plaintiffs' claim that their IIHI was unlawfully disclosed, they must allege what information was disclosed that relates to "their health."

Plaintiffs do provide a significant amount of detail in their Complaint about ways users allegedly ***can*** communicate with Humana's website, but it is in the form of hypothetical searches performed by hypothetical users. (*See, e.g.*, dkt. 1, ¶¶ 209-213.) None of the Plaintiffs make any attempt to connect his or her own experience to the hypotheticals presented: no Plaintiff claims that he or she used the same search functions on the same webpages as those demonstrated in the screenshots or otherwise claims to have used the website in a way that would result in a similar transfer of information. *See Hannant*, 2025 WL 2413894 at *5 ("Here, Plaintiff's allegations of her own experience, as opposed to a potential class member, lack the detail necessary to plausibly invoke the crime-tort exception via a HIPAA violation."). Because Plaintiffs have alleged only hypotheticals and have not alleged what of *their own* information they communicated to Humana on the websites, they have not plausibly alleged that Humana received any of their IIHI or other personal or sensitive information and so they cannot invoke the crime-tort exception on that basis.

---

WL 2299753, *5 (N.D. Ill. Aug. 8, 2025) (*Nguyen I*) ("Without allegations about what individual disclosures were made to [the defendant], plaintiffs fail to plausibly allege that [the defendant] received HIPAA-protected information."); *Doe v. Upperline Health, Inc.,* 2024 WL 4953503, *3 (S.D. Ind. Sept. 24, 2024) ("Given the dearth of information specific to Plaintiff as to what was specifically disclosed to Facebook that would plausibly be in violation of HIPAA, . . . the court must dismiss Plaintiff's Amended Complaint."); *J.C. v. Catholic Health System Inc.,* 2024 WL 5136236, *13 (W.D.N.Y. Aug. 29, 2024) ("[plaintiff] alleges that she searched 'for specific doctors and specialists who could help with specific conditions' . . . She does not, however, allege that this specific information was sent to Google or Facebook.").

**ii. Plaintiffs have further failed to allege that any of the information transferred to third-party vendors is related to any Plaintiff's health.**

Plaintiffs have further not plausibly alleged that any of the metadata captured by the tracking technologies in question "[r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual" as required to meet the definition of IIHI. 45 C.F.R. § 160.103.

Much of what Plaintiffs describe in their Complaint is the transfer of information via the use of tracking technologies on the public-facing website *www.humana.com*: in fact, Plaintiffs Deidun, MacIntyre, and Payne allege only that they used Humana's public website (rather than any of the portals). (Dkt. 1, ¶¶ 41, 44, 45.) But a user's search (even a specific one) for publicly-available information on a public-facing, unauthenticated website does not constitute personal health information precisely because it is available to everyone and, therefore, not specific to any user's own health condition. In *Smith v. Facebook, Inc.*, for instance, the Northern District of California dismissed a complaint filed by Facebook users alleging privacy law and FWA violations arising out of the use of Facebook social plugins on certain healthcare organizations' websites that resulted in the transmission of users' browsing activity to Facebook. 262 F. Supp. 3d 943, 948 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). The district court held, and the Ninth Circuit affirmed, that the web browsing information collected—including that plaintiffs had visited web pages about treatment options, specific doctors, and specific health conditions—was not sensitive medical information because "[t]he data show[ed] only that Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical history." *Smith*, 745 F. App'x at 9. A District Court in Texas vacated the Department of Health and Human Services' guidance regarding data from health care

providers' unauthenticated websites for the same reason.[7] *See Becerra*, 738 F. Supp. 3d at 802 ("metadata from a[n unauthenticated public webpage] search cannot constitute IIHI."); *see also Nienaber I*, 733 F. Supp. 3d at 1084 ("disclosure of browsing activity on a publicly available website that does not relate 'to the past, present, or future physical or mental health or condition of an individual' is not actionable.").

Further, even the data allegedly intercepted from the portal websites as described in Plaintiffs' hypotheticals do not convey any information about a user's health condition or treatment. Screenshots of information allegedly transferred to Coveo, Tealium, Foresee, and Quantum Metric demonstrate that no search terms or subpage names are transferred to any of these parties. (*See, e.g.*, dkt. 1, ¶¶ 210, 213, 218, 220, 222, 225, 247, 253, 260.)[8] Because these screenshots undermine the plaintiff's allegations, the Court may consider them in determining whether Plaintiffs have pled facts sufficient to state a claim. *See Nguyen v. Abbott Laboratories, Inc.*, 2026 WL 579206, *4 (N.D. Ill. Mar. 2, 2026) (*Nguyen II*) (noting that "the screenshots preclude plaintiffs from plausibly alleging that [the defendant]'s website transmitted their protected health information"); *Rand v. Eyemart Express, LLC*, 2025 WL 1519726, *4 (N.D. Tex. May 27, 2025) ("the figures showing the metadata and identifying specifically what information is sent to Meta belie any conclusory statements that the prescription information is included, because it is notably absent from the data seen to be tracked there.").

[7] Plaintiffs cite to this HHS guidance in their Complaint without acknowledging that it was vacated in significant part in 2024. (Dkt. 1, ¶¶ 158-170.) The guidance now specifically advises the reader that a court has "vacated the guidance to the extent it provides that HIPAA obligations are triggered in 'circumstances where an online technology connects (1) an individual's IP address with (2) a visit to a[n] [unauthenticated public webpage] addressing specific health conditions or healthcare providers.'" (*See Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html).

[8] *See* further discussion regarding Adobe below.

In the present case, what Plaintiffs' screenshots show is the transfer of rote metadata, not identifiable health-related information. (*See, e.g.*, dkt. 1, ¶ 218.) Even if a transfer of metadata *results* from a health-related communication, there is no transfer of IIHI if the metadata itself does not *contain* any health-related information. *See Kurowski II*, 683 F. Supp. 3d at 844 ("The type of metadata that Kurowski alleges was transmitted via third-party source code does not in the least bit fit into that category [of IIHI]."); *see also Rand*, 2025 WL 1519726 at *4. Here, Plaintiffs have effectively demonstrated that none of the metadata transferred to Coveo, Tealium, Foresee, or Quantum Metric constitutes or contains any information relating to any hypothetical user's health condition or treatment, let alone their own.

**iii. <u>Plaintiffs have not alleged that any of the data intercepted by third parties was identifiable.</u>**

The plausibility of Plaintiffs' allegations that Humana allowed the interception of IIHI is further undermined by Plaintiffs' failure to allege that any of the metadata intercepted by any third-party vendor contains information "[t]hat identifies the individual; or . . . [w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual." 45 C.F.R. § 160.103. In order to be IIHI, the information must identify the person whom it is about, but Plaintiffs have not alleged that the information in question here reveals identifying information.

Nowhere in their Complaint do Plaintiffs allege that their (or any hypothetical or putative class member's) names, email addresses, telephone numbers, Facebook IDs[9], or other potentially identifying information accompanied any transfer of metadata from Humana's website to any third party. Further, none of Plaintiffs' screenshots show the transfer of any such information. And even where Plaintiffs' screenshots of hypothetical searches indicate that search terms may have been reproduced in URLs transferred to Adobe (dkt. 1, ¶¶ 232, 234, 235, 236, 237), such information

[9] Humana does not concede that such information, alone, would be enough to identify an individual.

cannot constitute IIHI because there is no indication that such data can be used to identify the user. *See Hannant*, 2025 WL 2413894 at *4 ("When deciding whether a plaintiff has plausibly alleged that IIHI was obtained and improperly disclosed via a pixel tracker, courts seek to distinguish between tracking data derived from healthcare provider websites generally and tracking data which both relates to a specific individual's health *and reasonably can be used to identify that individual*.") (emphasis added).

Plaintiffs seem to suggest that the data in question was "identifiable" because transmissions from Humana's website to third-party vendors included "page location and parameters regarding the insured's browser, like cookies, which allow Adobe to link the insured [search] to a unique profile and monitor their behavior across the Internet." (Dkt. 1, ¶ 233; *see also* ¶¶ 238-240). But the ability to track a user across multiple websites is not the same as knowing who that person is and Plaintiffs have made no attempt to explain how this data could be used to identify a person. *See In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 286 (3d Cir. 2016) ("we ultimately do not think that the definition of personally identifiable information in the [Video Privacy Protection Act] is so broad as to cover . . . static digital identifiers"); *Griffith v. TikTok, Inc.*, 2024 WL 4308813, *2 (C.D. Cal. Sept. 9, 2024) ("having multiple data points showing visits to different websites by the same combination of IP address and user agent tends to show that the same person visited both sites. . . . Cookies can perform a similar function. . . . But, without more, this 'identifying' information does not disclose *who* the person is.").

Plaintiffs have, therefore, failed to plausibly allege that any data transferred to a third party by operation of the tracking technologies meets the definition of IIHI. If the data in question is not IIHI, then Plaintiffs have not plausibly alleged that Humana violated HIPAA by disclosing it. *See Becerra*, 738 F. Supp. 3d at 794.

***b. Plaintiffs Have Not Alleged that Humana Engaged in a Crime or Tort Independent from the Act of Interception Itself.***

Plaintiffs further cannot invoke the crime-tort exception to the FWA because they have not alleged that Humana caused the interception of the information in question for the purpose of committing a crime or tort separate from the act of the interception itself.

To invoke the crime-tort exception "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (emphasis added). "At the time of the recording the offender must intend to use the recording to commit a criminal or tortious act. Merely intending to record the plaintiff is not enough. . . . [and a] simultaneous tort arising from the act of recording itself is insufficient." *Id.* at 99-100; s*ee also, Sussman v. American Broadcasting Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("the focus [of the crime-tort exception] is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious."); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) ("[A]ll authority of which we are aware indicates that the criminal or tortious acts contemplated by [the crime-tort exception] are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits."); *Martinez v. Mentavi, Inc.*, 2025 WL 3780427, *3 (W.D. Mich. Oct. 9, 2025) (similar).

Courts around the country have applied this rule to conclude that the crime-tort exception does not apply in cases—like the present one—in which the plaintiff attempts to invoke the crime-tort exception based on the defendant's alleged violation of HIPAA through the use of website tracking technologies because, in such cases, the alleged HIPAA violation results from the interception itself and not some separate crime or tort committed later with the fruits of the

interception. *See, e.g., Okash v. Essentia Health*, 2024 WL 1285779, *4 (D. Minn. Mar. 26, 2024) ("Neither [plaintiff]'s Amended Complaint nor his briefing alleges independent criminal or tortious conduct. [Plaintiff]'s allegations that [defendant] violated HIPAA and privacy torts encompass only the simultaneous interception and disclosure of information to Meta."); *Doe v. Kaiser Foundation Health Plan, Inc.*, 2024 WL 1589982, *10 (N.D. Cal. April 11, 2024) (similar); *Nienaber I*, 733 F. Supp. 3d at 1095 (similar); *Nienaber v. Overlake Hospital Medical Center*, 2025 WL 692097, *13 (W.D. Wash. Mar. 4, 2025) (*Nienaber II*) (similar).

Here, Plaintiffs claim that Humana violated the FWA by allowing third parties to intercept their "communications" with the Humana websites through Humana's use of tracking technologies supplied by those third parties. (Dkt. 1, ¶¶ 2, 10-11, 15, 17-18.) Plaintiffs specifically allege that "Defendant causes the collection of this highly sensitive, private data by embedding the code of Tracking Technologies, such as Tracking Pixels, in its Website [and that t]he embedded code instantly sends private health-related data to the Third-Party Vendors. Defendant thereby permits the Third-Party Vendors to intercept insureds' private health-related information." (Dkt. 1, ¶¶ 17-18.) Plaintiffs do not allege here that Humana intercepted Plaintiffs' communications and then later unlawfully disclosed those communications to third parties (i.e., there is no allegation that Humana lawfully intercepted communications to use for some separate criminal or tortious purpose). Rather, Plaintiffs allege that Humana installed third-party code on its website that allowed those third parties to *directly intercept* their communications: it is the fact of the interception, itself, that constitutes the claimed HIPAA violation. But as the Second Circuit Court of Appeals has explained, "[a] simultaneous tort *arising from the act of recording itself* is insufficient." *Caro*, 618 F.3d at 99-100 (emphasis added). The crime-tort exception simply does not apply under these circumstances.

It is also for this reason that Plaintiffs' allegations regarding Humana's alleged intent to commit the tort of intrusion upon seclusion (dkt. 1, ¶ 396) is insufficient to invoke the crime-tort exception: the alleged intrusion is the alleged act of allowing a third party to intercept an allegedly private communication (i.e., the alleged interception itself). *See Caro*, 618 F. 3d at 101 ("Invasion of privacy through intrusion upon seclusion presents a problem for [the plaintiff]—it is a tort that occurs through the act of interception itself.").

#### *c. Plaintiffs Have Not Alleged that Humana Intercepted their Data for an Illegal or Tortious Purpose.*

Finally, Plaintiffs cannot invoke the crime-tort exception because they have not alleged that Humana allowed third parties to intercept their data for the *purpose* of violating HIPAA or invading their privacy. It is not enough that an alleged interception happens to result in a criminal violation or tort—it must be committed for that purpose in order to invoke the crime-tort exception. *See Martinez*, 2025 WL 3780427 at *3 (noting that "[t]he [crime-tort] exception does not apply . . . if a crime or tort was merely a result of the interception; the Defendant must specifically intend to bring about the tortious or criminal result."); *Doe v. Genesis Health System*, 2025 WL 1000192, *9 (C.D. Ill. Mar. 18, 2025) ("the language is clear that the interception must be 'for the purpose of committing . . . any tortious act."). Therefore, in order to invoke the crime-tort exception, courts have held that "either the 'primary motivation' or a 'determinative factor' in the actor's decision to record [must be] the intent to commit a criminal or tortious act." *Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732, *3 (D. Mass. June 24, 2025).

Here, Plaintiffs allege that Defendant "permits the Third-Party Vendors to intercept insureds' private health-related information" because "Defendant benefits financially by obtaining and analyzing data that enables it to add new customers, replacing the need for (and costs associated with) advertising, and surreptitiously finding targets for advertising campaigns." (Dkt.

1, ¶¶ 18-19.) Plaintiffs allege that "[t]hese commercial advantages come at the expense of insureds' privacy" (dkt. 1, ¶ 20), but they do not allege that Humana's *purpose or aim* was to invade their privacy or otherwise harm them. And where, as here, the plaintiffs specifically allege that the defendant's purpose in allowing the interception was for commercial gain (and not to intentionally harm the plaintiffs), Plaintiffs cannot plausibly invoke the crime-tort exception and dismissal is appropriate. *See In re Meta Pixel Healthcare Litigation*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Multiple courts in this district have found that the crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously.").

For instance, in *Martinez v. Mentavi, Inc.*, the court dismissed the plaintiffs' FWA claim under the one-party consent rule—even though they attempted to invoke the crime-tort exception by alleging that the defendant's installation of data tracking tools on its website amounted to the unlawful sharing of their health-related information with third parties in violation of HIPAA—because their allegations "show[ed] that Defendant's primary motivation when intercepting Plaintiffs' PHI data was commercial—not criminal or tortious—in nature." 2025 WL 3780427 at *5. In their complaint, the plaintiffs there, like Plaintiffs here, alleged that "[t]he third parties, like Meta and Google, then analyze[d] the collected data and sen[t] it back to Defendant for its use" and that "Defendant use[d] the analysis report to help increase its revenues and profits." *Id.* at *1; *see also Doe v. Talkiatry Management Services, LLC*, --- F. Supp. 3d ----, 2026 WL 206483, *3 (C.D. Cal. 2026) (dismissing Wiretap Act claim where the plaintiff had alleged that "Defendant installed Meta for the purpose of advertising" and had "not alleged that either the 'primary

motivation or a determining factor in [Defendant's] actions has been to injure plaintiffs tortiously.'").[10]

Therefore, the crime-tort exception does not apply and Humana's consent to the installation of the tracking technologies in question bars Plaintiffs' claims under the FWA.

***C. Plaintiffs Have Failed to State a Claim for Breach of Fiduciary Duty.***

The Court must also dismiss Plaintiffs' breach of fiduciary duty claim because it is premised entirely on Humana's alleged failure to "maintain the confidentiality and privacy of Plaintiffs' PHI" under HIPAA and Kentucky law. (Dkt. 1, ¶¶ 400-405.) Because Plaintiffs have failed to allege that Humana disclosed any of their IIHI, as discussed at length above, Plaintiffs have failed to allege any facts that would plausibly support a claim that Humana breached any fiduciary duty to maintain the confidentiality of Plaintiffs' health-related information. Count II of Plaintiffs' Complaint must be dismissed for failure to state a claim.

***D. Plaintiffs Have Failed to State a Claim for Intrusion Upon Seclusion.***

Plaintiffs' failure to allege any facts regarding the interception of their own browsing data also dooms their intrusion upon seclusion claim. Under Kentucky law, to state a claim for intrusion upon seclusion, Plaintiffs must allege an "intentional[] intru[sion] . . . upon the solitude or seclusion of another or his private affairs or concerns" and that "the intrusion would be highly offensive to a reasonable person." *Pearce v. Whitenack*, 440 S.W.3d 392, 400 (Ky. 2014). But Plaintiffs here have failed to sufficiently allege that they had any expectation of privacy as it comes to their own data or that the collection of their browsing data would be highly offensive to a reasonable person.

[10] *See also*, *Rodriguez v. FastMed Urgent Care,* 741 F. Supp. 3d 352, 363 (E.D.N.C. 2024); *Katz-Lacabe v. Oracle America, Inc*., 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023); *Goulart*, 2025 WL 1745732 at *3; *Genesis Health System,* 2025 WL 1000192 at *9; *Roe v. Amgen Inc*., 2024 WL 2873482, *6 (C.D. Cal. June 5, 2024); *Kaiser Foundation*, 2024 WL 1589982 at *10.

As an initial matter, Plaintiffs have not stated a claim for intrusion upon seclusion because the conduct of which Plaintiffs complain is not Humana's intrusion on a private communication (indeed, Humana was the intended recipient of the claimed communications), but the sharing of allegedly private information with third parties. *See Kurowski II*, 683 F. Supp. 3d at 849 (dismissing the plaintiff's intrusion upon seclusion claim because "[defendant] cannot plausibly be considered to have intruded on . . . private communications that it was always the intended recipient of."); *Hartley v. University of Chicago Medical Center*, 2023 WL 7386060, * (N.D. Ill. Nov. 8, 2023) ("Since [p]laintiff is complaining about what she thinks [defendant] told Facebook, her complaints are with the publication, and not any intrusion . . . .").

Further, because Plaintiffs have not alleged anything with respect to their own data, they cannot have sufficiently alleged that they had any expectation of privacy in it. Again, Plaintiffs have failed to allege that any of *their* data intercepted by third parties revealed anything personal or sensitive about them; at best they have alleged that some unspecified metadata about their use of the website was intercepted. However, "the collection and disclosure of a website visitor's activity does not constitute the highly objectionable conduct needed to state a claim [for intrusion upon seclusion]." *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 72 (W.D. Pa. 2023). Because Plaintiffs have not alleged that the data allegedly intruded upon was private, they have not stated a claim for intrusion into their private affairs. *See Santoro*, 2024 WL 1773371 at *6 (dismissing intrusion upon seclusion claim because "without any further factual matter describing the information, . . . the characterization of the alleged intrusion as highly offensive is conclusory and insufficient to state a claim."); *Rand*, 2025 WL 1519726 at *5 (Plaintiffs' . . . intrusion upon seclusion claims are premised upon the disclosure of plaintiffs' PHI [but b]ecause plaintiffs have failed to plausibly plead facts to show that any PHI was shared with Meta, there is insufficient

factual basis to state a claim for . . . intrusion upon seclusion."). Count II of Plaintiffs' Complaint must be dismissed.

### *E. Plaintiffs Have Failed to State a Claim for Unjust Enrichment.*

Finally, Plaintiffs have failed to state a claim for unjust enrichment where they have not sufficiently pled that Humana acted wrongfully in intercepting their data. Under Kentucky law, "In order for a party to prevail under the theory of unjust enrichment, it must prove three elements: (1) benefit conferred upon defendant at plaintiffs['] expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Furlong Dev. Co., LLC v. Georgetown–Scott Cnty. Planning and Zoning Comm.*, 504 S.W.3d 34, 39-40 (Ky. 2016) (citations omitted). Plaintiffs here have failed to plead sufficient facts in support of their allegations that a supposed benefit was conferred upon Humana at their expense or that Humana wrongfully retained such benefit.

First, an unjust enrichment claim lies only where a defendant has been benefitted *to the plaintiff's detriment*, or at the plaintiff's expense. *Id.*; *Harms v. Chase Home Fin., LLC*, 552 S.W.3d 516, 521 (Ky. Ct. App. 2018). Plaintiffs here, however, have failed to allege any facts regarding what of their browsing data Humana allegedly intercepted, let alone that they suffered any loss or harm as a result of Humana's alleged use of that unspecified browsing data. The only losses that Plaintiffs here claim to have suffered are a "loss of privacy" and the "potential for identity theft" (dkt. 1, ¶ 424) but, as discussed in detail above, Plaintiffs have failed to allege any facts that would support their claims that their privacy was actually invaded or that their browsing data was identifiable. These types of vague assertions of loss are not sufficient to support a claim for unjust enrichment where the Plaintiffs have failed to allege what of their information was actually intercepted. *See Nienaber I*, 733 F. Supp. 3d at 1093-1094 (dismissing the plaintiff's unjust enrichment claim where the plaintiff failed to "make contentions regarding the specific

private information she contends that she shared with Defendant and that Defendant, in turn, shared to third parties."); *B.K. v. Eisenhower Medical Center*, 721 F. Supp. 3d 1056, 1070 (C.D. Cal. 2024) ("Without specific allegations about the underlying information that was allegedly disclosed, it is unclear to the Court how, if at all, [d]efendant was unjustly enriched.").

Further, where no fraud or unlawful conduct is alleged, a claim for unjust enrichment does not lie: if the court dismisses Plaintiffs' other substantive claims because Plaintiffs have failed to allege facts to support them, it must also dismiss their unjust enrichment claim. *See Hannant*, 2025 WL 2413894 at *17; *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, *14 (C.D. Cal. Feb. 27, 2025) ("where there is no 'actionable wrong,' as currently alleged here, there can be 'no basis for relief.'"). Count IV of Plaintiffs' Complaint must also be dismissed.

## IV. CONCLUSION

WHEREFORE, Defendant Humana Inc. respectfully requests an Order dismissing Plaintiffs' Class Action Complaint for failure to state a claim, and for any other relief the Court deems proper.

Dated: March 23, 2026

Respectfully submitted,

HUMANA INC.

By: _/s/ Michael P. Abate_____________
One of its Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was e-filed, and a true and correct copy was electronically served on all counsel of record via the Court's CM/ECF system.

*/s/Michael P. Abate*
Michael P. Abate