**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

| | |
|---|---|
| NICOLE DEIDUN, ELLIOT GORLIN, KELLY JEWELL, NANCY MACINTYRE, and MARY PAYNE, individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>HUMANA INC.,<br><br>    *Defendant*. | Case No. 3:26-CV-54-GNS |

**PLAINTIFFS' OPPOSITION TO DEFENDANT HUMANA INC.'S MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

## Table of Contents

Preliminary Statement ................................................................................................................. 1

Background ................................................................................................................................... 2

A.    Defendant's Interception of Plaintiffs' Private Health Information ..................................... 2

    1.    Plaintiffs' Use of Defendant's Website and Portal to Manage Their Healthcare ......... 2

    2.    Defendant's Interception of Plaintiffs' Communications ............................................. 3

    3.    Defendant Intercepts Plaintiffs' Private Information for its Financial Benefit ............ 4

B.    Defendant's Inaccurate Representations Regarding its Data Privacy Practices ................... 4

Legal Standard ............................................................................................................................. 5

Argument ...................................................................................................................................... 5

I.    Plaintiffs Have Stated a Claim Under the Federal Wiretap Act ........................................... 5

A.    Plaintiffs Plausibly Allege That Defendant Intercepted and Disclosed the
    "Contents" of Their Communications ........................................................................... 5

B.    Because the FWA's Crime-Tort Exception Applies, the FWA's One-Party
    Consent Rule Does Not Bar Plaintiffs' Claims ............................................................. 9

    1.    Defendant's Disclosure of Plaintiffs' Health Information Violated
        HIPAA ...................................................................................................................... 10

        a.    Plaintiffs allege the interception of their health information. ................. 10

        b.    Plaintiffs allege that the at-issue data is individually identifiable. ......... 14

    2.    There Is No Statutory Basis for a "Independent Act" Requirement, and,
        in any Event, Plaintiffs Allege Independent Acts ............................................. 15

    3.    Plaintiffs Plausibly Allege that Defendant Disclosed Their Private Health
        Information for a Tortious Purpose ................................................................... 17

II.    Plaintiffs Have Stated a Claim for Intrusion Upon Seclusion ........................................... 19

III.    Plaintiffs Have Stated a Claim for Unjust Enrichment ....................................................... 23

IV.    Plaintiffs Have Stated a Claim for Breach of Fiduciary Duty ............................................ 25

Conclusion ................................................................................................................................. 25

**Table of Authorities**

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
No. 24-cv-1404, 2024 U.S. Dist. LEXIS 161090  (N.D. Ill. Sept. 9, 2024) ................... 6, 12, 16

*AFT Mich. v. Project Veritas*,
No. 17-cv-13292, 2026 U.S. Dist. LEXIS 67680 (E.D. Mich. March 30, 2026) ..................... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................ 5

*B.N. v. Or. Reprod. Med., LLC*,
No. 3:25-cv-00202, 2025 U.S. Dist. LEXIS 222638 (D. Or. Nov. 12, 2025) ...................... 9, 18

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ......................................................... 5

*Binno v. American Bar Ass'n*,
826 F.3d 338 (6th Cir. 2016) ................................................................................................ 5

*Brahm v. Hosp. Sisters Health Sys.*,
No. 23-cv-444, 2024 U.S. Dist. LEXIS 114827 (W.D. Wis. June 28, 2024) ...................... 16, 19

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .................................................................................................. 17

*Castillo v. CostCo Wholesale Corp.*,
No. 2:23-cv-01548, 2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024) .................... 9

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ..................................................................................... 22

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ................................................................................... 19

*Doe v. Google*,
No. 23-cv-02431, 2025 U.S. Dist. LEXIS 108376 (N.D. Cal. June 6, 2025) .......................... 15

*Doe v. Shady Grove Reprod. Sci. Ctr., P.C.*,
No. 24-cv-2368, 2025 U.S. Dist. LEXIS 192453 (D. Md. Sept. 30, 2025) ............................. 21

*Doe v. Wellstar Health Sys., Inc.*,
799 F. Supp. 3d 1268 (N.D. Ga. 2025) ................................................................................. 17

*Furlong Dev. Co., LLC v. Georgetown-Scott County Planning & Zoning Commission*,
504 S.W.3d 34 (Ky. 2016) .................................................................................................... 23

*Gaige v. Exer Holding Co., LLC*,
No. 24-cv-6099, 2025 U.S. Dist. LEXIS 17146 (C.D. Cal. Jan. 30, 2025) ............................. 15

*Gay v. Garnet Health*,
No. 23-cv-6950, 2024 U.S. Dist. LEXIS 168515 (S.D.N.Y. Sept. 16, 2024) ......................... 6, 9

*Griffith v. TikTok, Inc.*,
No. 23-cv-00964, 2024 U.S. Dist. LEXIS 176403 (C.D. Cal. Sept. 9, 2024) ......................... 15

*Hannant v. Culbertson,*
 No. 4:24-cv-04164, 2025 U.S. Dist. LEXIS 161412 (C.D. Ill. Aug. 20, 2025) ....................... 13

*Hartley v. Univ. of Chi. Med. Ctr.,*
 No. 22 C 5891, 2024 U.S. Dist. LEXIS 78517 (N.D. Ill. Apr. 30, 2024) ................................. 16

*HDC, LLC v. City of Ann Arbor,*
 675 F.3d 608 (6th Cir. 2012) ...................................................................................................... 5

*Huff v. Spaw,*
 794 F.3d 543 (6th Cir. 2015) ...................................................................................................... 6

*In re Grp. Health Plan Litig.,*
 709 F. Supp. 3d 707 (D. Minn. 2023) ................................................................... 6, 9, 19, 21, 24

*In re Nickelodeon Consumer Privacy Litig.,*
 827 F.3d 262 (3d Cir. 2016) ...................................................................................................... 15

*Jarrett v. Upperline Health, Inc.,*
 No. 23-cv-01261, 2025 U.S. Dist. LEXIS 219352 (S.D. Ind. Aug. 8, 2025) ........................... 19

*Kane v. University of Rochester,*
 No. 23-cv-6027-FPG, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024)................ 9, 12

*Keilholtz v. Lennox Health Products,*
 268 F.R.D. 330 (N.D. Cal. 2010) .............................................................................................. 24

*Lugo v. Inova Health Care Servs.,*
 No.1:24-cv-700, 2025 U.S. Dist. LEXIS 55590 (E.D. Va. March 25, 2025) .................... 12, 15

*Luis v. Zang,*
 833 F.3d 619 (6th Cir. 2016) ............................................................... 1, 6, 7, 8, 9, 12, 20

*M.R. v. Salem Health Hosps. & Clinics,*
 No. 6:23-cv-01691, 2024 U.S. Dist. LEXIS 155513 (D. Or. Aug. 28, 2024)......... 12, 21, 22, 24

*McCall v. Courier-Journal & Louisville Times Co.,*
 623 S.W.2d 882 (Ky. 1981) ................................................................................................ 20, 21

*McClain v. Cap. Vision Servs., LLC,*
 No. 25-cv-7675, 2026 U.S. Dist. LEXIS 52341 (N.D. Ill. Mar. 13, 2026)................................. 6

*Murphy v. Thomas Jefferson Univ. Hosps., Inc.,*
 No. 22-4674, 2024 U.S. Dist. LEXIS 177625 (E.D. Pa. Sept. 30, 2024) ........................... 16, 19

*Nguyen v. Abbott Laboratories, Inc.,*
 No. 24-cv-8289, 2025 U.S. Dist. LEXIS 153248 (N.D. Ill. Aug. 8, 2025) .............................. 13

*Nienaber v. Overlake Hosp. Medical Ctr.,*
 733 F. Supp. 3d 1072 (W.D. Wash. 2024)................................................................................. 13

*Planned Parenthood Fed'n of Am., Inc. v. Newman,*
 51 F.4th 1125 (9th Cir. 2022) .................................................................................................... 17

*R.C. v. Walgreen Co.,*
 No. 23-cv-1933, 2024 U.S. Dist. LEXIS 84744 (C.D. Cal. May 9, 2024).............................. 19

*R.S. v. Prime Healthcare Services*,
   No. 5:24-cv-00330, 2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025)........................... 17

*Rondigo, L.L.C. v. Township of Richmond*,
   641 F.3d 673 (6th Cir. 2015)................................................................................................. 11

*Santoro v. Tower Health*,
   No. 22-4580, 2024 U.S. Dist. LEXIS 74348 (E.D. Pa. April 24, 2024)................................... 12

*Shah v. Fandom, Inc.*,
   754 F. Supp. 3d 924 (N.D. Cal. 2024) .................................................................................. 15

*Silveira v. Commercial Specialty Truck Holdings, LLC*,
   No. 25-048, 2025 U.S. Dist. LEXIS 155058 (E.D. Ky. Aug. 12, 2025).................................. 23

*Smith v. Bob Smith Chevrolet, Inc.*,
   275 F. Supp. 2d 808 (W.D. Ky. 2003)................................................................................... 21

*Smith v. Loyola Univ. Med. Ctr.*,
   No. 23-cv-15828, 2024 U.S. Dist. LEXIS 119995 (N.D. Ill. July 9, 2024) ........................... 16

*Stein v. Edward-Elmhurst Health*,
   No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) ................... 9, 16, 18

*Strong v. LifeStance Health Grp. Inc.*,
   No. 23-00682, 2025 U.S. Dist. LEXIS 14601 (D. Ariz. Jan. 27, 2025) ................................... 9

*Sussman v. ABC*,
   186 F.3d 1200 (9th Cir. 1999)............................................................................................... 18

*Sweat v. Houston Methodist Hosp.*,
   No. H-24-775, 2024 U.S. Dist. LEXIS 108806 (S.D. Tex. June 20, 2024).............................. 9

*Tash v. Vision Service Plan*,
   No. 25-cv-00762, 2026 U.S. Dist. LEXIS 81761 (E.D. Cal. April 14, 2026) ......................... 25

*Thakkar v. Ocwen Loan Servicing*,
   No. 15-10109, 2019 U.S. Dist. LEXIS 83250 (N.D. Ill. May 17, 2019)................................. 23

*Theys v. Dental Intel., Inc.*,
   No. 25-cv-2464, 2026 U.S. Dist. LEXIS 46654 (N.D. Ill. Mar. 6, 2026)..................... 12, 13, 22

*Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*,
   615 F.3d 622 (6th Cir. 2010).................................................................................................. 5

*Unifund CCR Partners v. Harrell*,
   509 S.W.3d 25 (Ky. 2017) .................................................................................................... 24

*United States v. Warshak*,
   631 F.3d 266 (6th Cir. 2010).................................................................................................. 6

*Vriezen v. Infinite Health Collaborative, P.A.*,
   No. 24-cv-3743, 2025 U.S. Dist. LEXIS 211708 (D. Minn. Sept. 30, 2025)........... 6, 12, 22, 24

*Welling v. Weinfeld*,
   866 N.E.2d 1051 (Ohio 2007) .............................................................................................. 20

*Wright v. TrueCare Property Holdings, LLC*,
   No. 25-cv-786, 2025 U.S. Dist. LEXIS 229707 (S.D. Cal. Nov. 21, 2025) ............................ 12

*Yershov v. Gannett Satellite Info. Network, Inc.*,
   820 F.3d 482 (1st Cir. 2016) ............................................................................... 14

**Statutes**

18 U.S.C. § 2510(8) ............................................................................................................ 6

18 U.S.C. § 2511(2)(d) ................................................................................................... 9, 15

42 U.S.C.A. § 1320d-6(a) ................................................................................................. 10

**Regulations**

45 C.F.R. § 160.103 ...................................................................................... 3, 10, 11, 13, 14

45 C.F.R. § 164.514(b)(2) .............................................................................................. 14, 15

45 C.F.R. § 164.514(b)(2)(A-R) ........................................................................................ 14

## **PRELIMINARY STATEMENT**

Defendant's argument for dismissal rests almost entirely on the premise that, notwithstanding the First Amended Complaint's ("FAC") 433 paragraphs of factual allegations, Plaintiffs fail to adequately allege that Defendant intercepted and then disclosed their private health information to third parties for financial gain. But Defendant ignores the *extensive* allegations of the FAC, which describe, in detail, precisely how Defendant surreptitiously embedded tracking technologies into its website and password-protected portal for Plaintiffs and other insureds, and then used those technologies to intercept and transmit Plaintiffs' confidential health information to third parties for marketing and profit-generating purposes. Because each of Defendant's bases for dismissal is meritless, the Court should deny Defendant's motion in its entirety.

*First*, Defendant's argument that Plaintiffs fail to state a claim under the Federal Wiretap Act ("FWA") is baseless. There can be no serious dispute that, under controlling Sixth Circuit authority that Defendant omits entirely, *Luis v. Zang*, 833 F.3d 619, 640 (6th Cir. 2016), the FAC alleges that Defendant intercepted the "contents" of Plaintiffs communications. Further, as courts throughout the country have overwhelmingly found, the FAC's allegations that Defendant intercepted and disclosed Plaintiffs' private health information in violation of HIPAA is sufficient to invoke the FWA's crime-tort exception. *Second*, Plaintiffs state a claim for intrusion upon seclusion because they allege that Defendant permitted third parties to intercept their private health-related communications – and Plaintiffs need do no more under the controlling standard. And *third*, because Plaintiffs allege that they were denied the financial benefit of Defendant's collection of their valuable private health data, they allege a claim for unjust enrichment under controlling Kentucky law.

For these reasons, and those below, Defendant's motion to dismiss should be denied.

1

**BACKGROUND**

**A.    Defendant's Interception of Plaintiffs' Private Health Information**

Plaintiffs are Defendant's insureds whose electronic communications Defendant surreptitiously intercepted. FAC ¶¶ 8–20. As Plaintiffs allege, Defendant maintains both a website (the "Website") and a password-protected portal, MyHumana, through which "insureds can log in to review care and claims, manage prescriptions, and even complete mental health assessments." *Id.* ¶ 8. Plaintiffs allege that Defendant embedded on the Website and the portal tracking technologies – including tracking pixels and session replay code[1] – provided by third-party vendors (the "Third-Party Vendors"). *Id.* ¶ 10. These tracking technologies captured Plaintiffs' private health-related communications, including keystrokes, search queries, and portal activity, and transmitted these communications to the Third-Party Vendors. *Id.* ¶¶ 10–18.

1.    <u>Plaintiffs' Use of Defendant's Website and Portal to Manage Their Healthcare</u>

All Plaintiffs allege that they used Defendant's Website and MyHumana portal to manage their healthcare. FAC ¶¶ 41–45. More specifically, Plaintiffs allege the following:

- Plaintiff Nicole Deidun "visits [Defendant's] Website to access the MyHumana portal, where she searches for providers, views claims and explanations of benefits ('EOBs'), and checks the balance on her monthly over-the-counter benefit card." FAC ¶ 41.

- Plaintiff Elliot Gorlin "logged into Defendant's patient portal, where he searched for providers, checked the status of claims, and filled and researched prescriptions." *Id.* ¶ 42.

- Plaintiff Kelly Jewell "routinely accessed the MyHumana portal to search for providers, view claims, copayments, and EOBs, verify billing accuracy, and research prescriptions." *Id.* ¶ 43.

- Plaintiff Nancy MacIntyre "access[ed] the MyHumana portal "to search for providers,

---

[1] A tracking pixel is code that tracks users' interactions with a website, including the full text of any search queries entered. FAC ¶¶ 108–14. Session replay is code that "logs and tracks *everything* a user does on a webpage, including mouse movements, clicks, scrolls, and taps, and can actually track every single key stroke, creating a *complete* reproduction of the user's visit to the website." FAC ¶ 121 (original emphasis).

verify whether dentists and providers were in-network, look up medications, and verify copays." *Id.* ¶ 44.

- Plaintiff Mary Payne "logg[ed] into the MyHumana portal to manage her prescriptions, search for providers, obtain prior authorizations, research medications, and view her claims." *Id.* ¶ 45.

Plaintiffs allege that each Plaintiff was tracked in the ordinary course of managing his or her healthcare, and that the intercepted information falls within the Health Insurance Portability and Accountability Act's ("HIPAA") definition of "protected health information." *Id.* ¶¶ 184, 322–33. This is because Plaintiffs allege that the disclosed information is individually identifiable and "relate[s] to the past, present, or future physical or mental health condition of an individual; the provision of health care to an individual, or the payment for health care." 45 C.F.R. § 160.103.

### 2.    Defendant's Interception of Plaintiffs' Communications

Plaintiffs allege that the tracking technologies embedded on Defendant's Website and portal allow Defendant to intercept and disclose the health-related communications of Plaintiffs and other insureds. FAC ¶¶ 8–16. These tracking technologies load immediately on both public-facing pages of Defendant's Website and within Defendant's purportedly secure portal, and track every interaction with Defendant's Website and portal, including "keystrokes (text entered into a search box or information box), web addresses (i.e., 'URLs') of individual pages visited, mouse movements, clicks, and/or other electronic communications in real time." *Id.* ¶ 11. Plaintiffs further allege that third parties install "cookies" that "allow[] Defendant and Third-Party Vendors to persistently identify and monitor the insured across sessions or pages, and to build a behavioral profile with a specific audience, a current visit ID, and an ID from past sessions[.]" *Id.* ¶ 226; *see also id.* ¶¶ 181 (private information disclosed within portal "tied to a specific user's identity"), 239 ("[Adobe] assign[s] multiple persistent identifiers to individual insureds that can be used to link

3

them to a digital profile and track them across sessions and the Internet").[2]

In addition, Plaintiffs allege that Defendant employs session replay technology on its Website and in its portal. *Id.* ¶¶ 229, 258, 285. Unlike tracking pixels, which record discrete interactions, Defendant's session replay code recreates entire browsing sessions, logging every keystroke, mouse movement, scroll, and click, and transmitting that data to Defendant and the Third-Party Vendors. *Id.* ¶ 121. This allows Defendant and the Third-Party Vendors to covertly observe *all* health-related activities of insured individuals on Defendant's website and portal. *Id.*

3.      Defendant Intercepts Plaintiffs' Private Information for its Financial Benefit

Plaintiffs allege that Defendant tracks and discloses insureds' communications with its Website and portal for its financial benefit. *Id.* ¶¶ 18–20. By collecting insureds' private health information, Plaintiffs allege that Defendant is able "to identify groups or segments among its insureds, and refine marketing to increase enrollment[.]" *Id*. ¶ 185. Plaintiffs further allege that Defendant profits from the collection of their private health data via "targeted advertising" and transmitting their valuable private health information to third parties for monetary gain. *Id*. ¶ 427.

B.      **Defendant's Inaccurate Representations Regarding its Data Privacy Practices**

Plaintiffs allege that Defendant represented to its insureds that it would not disclose their private health information to third parties except with written authorization. *Id.* ¶ 274. Defendant additionally promised insureds that it would "only use your sensitive Personal Information to provide you with the requested products or services and to administer your account." *Id*. ¶ 270. While Defendant's privacy policy vaguely refers to the use of tracking technologies, the privacy policy makes clear that Defendant does so only to "administer, maintain, evaluate, and improve

---

[2] A "cookie" is data that is sent to a user's computer by a website when the user visits the website. FAC ¶ 92. Cookies are used to "remember" users between sessions, including how users interact with the website. *Id*. ¶ 94.

our websites" and "to conduct research and analytics related to our websites and Services." *Id*. Figure 41. Defendant entirely fails to disclose that intercepted information is shared with third parties. *Id*.

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, "courts must accept as true all material allegations of the complaint[] and must construe the complaint in favor of the complaining party." *Binno v. American Bar Ass'n*, 826 F.3d 338, 344 (6th Cir. 2016) (citation omitted). A plaintiff must only plead "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) ("We find it inaccurate to read [*Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)] so narrowly as to be the death of notice pleading and we recognize the continuing viability of the 'short and plain' language of Federal Rule of Civil Procedure 8.").

## ARGUMENT

### I.   Plaintiffs Have Stated a Claim Under the Federal Wiretap Act

A.   <u>Plaintiffs Plausibly Allege That Defendant Intercepted and Disclosed the "Contents" of Their Communications</u>

Defendant's position that Plaintiffs have not stated an FWA claim because Defendant did not intercept the "contents" of Plaintiffs' communications is wholly without merit. Mem. at 6–8. Despite Defendant's attempts to ignore the FAC's allegations and mischaracterize the at-issue information as "rote metadata" lacking significance (Mem. at 15), the FAC more than adequately alleges that Defendant disclosed the "contents" of Plaintiffs' communications.

The FWA broadly defines "contents" of communications to include "any information

concerning the substances, purport, or meaning" of a communication. 18 U.S.C. § 2510(8); *see Huff v. Spaw*, 794 F.3d 543, 546 (6th Cir. 2015) (words exchanged constituted "contents" of a communication); *United States v. Warshak*, 631 F.3d 266, 282–83 (6th Cir. 2010) (electronic communications, including emails, comprise "contents" under similar Stored Communications Act). Consistent with the FWA's broad definition of "contents," both the Sixth Circuit and courts across the country have overwhelmingly found that allegations that are materially identical to those asserted in the FAC allege interception of the "contents" of communications, and thus state a claim under the FWA. *See*, *e.g.*, *Luis*, 833 F.3d at 631–32 (instant messages, emails, and other electronic communications constituted "contents" of communications for purposes of FWA claim); *see also, e.g.*, *McClain v. Cap. Vision Servs., LLC*, No. 25-cv-7675, 2026 U.S. Dist. LEXIS 52341, at *15–16 (N.D. Ill. Mar. 13, 2026) (using website to schedule appointment with healthcare provider constituted "contents" under the FWA); *Vriezen v. Infinite Health Collaborative, P.A.*, No. 24-cv-3743, 2025 U.S. Dist. LEXIS 211708, at *17–18 (D. Minn. Sept. 30, 2025) (similar); *Gay v. Garnet Health*, No. 23-cv-6950, 2024 U.S. Dist. LEXIS 168515, at *11 (S.D.N.Y. Sept. 16, 2024) (data regarding "medical treatment sought, the particular health condition, and the fact that the individual attempted to or did book a medical appointment" constituted "contents" under the FWA) (internal quotations omitted); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24-cv-1404, 2024 U.S. Dist. LEXIS 161090 at *15–16 (N.D. Ill. Sept. 9, 2024) (using medical provider's website to perform search queries and fill out forms, including scheduling appointments and searching for doctors or treatments, constituted "contents"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 712, 718 (D. Minn. 2023) ("duration spent on web pages, button clicks, viewed pages, and typed text or phrases" on a healthcare provider's website constituted "contents" under the FWA).

Here, Plaintiffs allege that the tracking technologies Defendant employed were configured

6

to track *every* interaction between insureds and the Website or portal, including typed entries, mouse movements, clicks, scrolling behavior, page navigation, and search queries. FAC ¶¶ 11, 239. Plaintiffs further allege that this information was transmitted, in real time, to third parties, and included Plaintiffs' private health information, such as communications related to medical providers, prescriptions, treatments, and medical claims and conditions. FAC ¶¶ 41–45. Under controlling Sixth Circuit authority, this and similar information indisputably constitutes the "contents" of Plaintiffs' communications. *Luis*, 833 F.3d at 631.

The Sixth Circuit's decision in *Luis*, which Defendant omits, is instructive. There, the Sixth Circuit reversed the dismissal of FWA claims involving technology that "records all PC activity including emails, IMs, websites visited, web searches . . . and anything typed in real time." 833 F.3d at 624. In so doing, the Sixth Circuit held that allegations that a defendant's technology allowed monitoring "in near real-time, even while the person is still using the computer," sufficiently alleged a violation of the FWA. *Id.* at 631. Plaintiffs allege the same conduct here: that Defendant's tracking technologies captured "keystrokes," search queries, "URLs" (i.e., web addresses), "mouse movements," "clicks," and other communications "in real time." FAC ¶¶ 11, 229, 247, 259–63. Under *Luis*, these allegations are more than sufficient to state an FWA claim.

Indeed, Defendant concedes that courts find that "URLs that reproduce a user's request to a search engine for specific information containing search terms" may be "contents" of communications within the meaning of the FWA. Mem. at 7. Thus, even under Defendant's artificially narrow (and legally incorrect) reading of the FWA, Plaintiffs *still* allege that the "contents" of their communications were intercepted, because (i) each Plaintiff alleges that they used Defendant's Website to perform searches, including searches for providers and medications, *see* FAC ¶¶ 41–45; and (ii) the FAC alleges that the at-issue third-party tracking technologies are

7

configured to intercept URLs containing *full and exact* search terms entered on the Website. *See, e.g.*, FAC ¶¶ 221, 233, 235, 237. Defendant does not identify a single case in which a court has deemed a URL containing search terms to *not* be "contents" within the meaning of the FWA.

Nevertheless, Defendant insists that even if "searches" (Mem. at 12) can constitute "contents" of communications under the FWA, Plaintiffs' detailed allegations regarding how they interacted with Defendant's Website are insufficient because Plaintiffs must allege all of the search terms they entered, medications and healthcare providers they used, and medical conditions from which they suffered throughout the entire relevant period. *See* Mem. at 7, 12. But Defendant's assertion that this level of specificity is necessary at the pleading stage is entirely unsupported. As the Sixth Circuit held in *Luis*, a district court "must accept the complaint's well-pleaded factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor." *Luis*, 833 F.3d at 626 (citation omitted). Accordingly, allegations that generally describe how technology intercepts and reroutes communications in real time, even without all of the technical details, plausibly alleges an FWA claim. *Id.* at 629–33 ("Luis at this point in the litigation need push his claim past only the 'speculative level.' Hence, even if there exists some minimal doubt about . . . complaint, that doubt, standing alone, is not enough to ignore the materials [of the complaint].") (cleaned up).

Furthermore, Plaintiffs' allegations here are *substantially* more detailed than those that the Sixth Circuit found sufficient in *Luis*. The FAC contains approximately 90 paragraphs explaining the operation of the at-issue tracking technologies, the categories of communications intercepted, the role of cookies and other persistent identifiers, the operation of session replay code, and the transmission of healthcare-related communications to third parties. FAC ¶¶ 8–18, 181, 184, 186–264. Defendant's argument that Plaintiffs must identify each word, precise medical condition,

8

provider, and prescription that they entered over a several-year period in order to state a plausible claim is fundamentally inconsistent with Rule 8 and the controlling Sixth Circuit legal standard. *See, e.g.*, *Luis*, 833 F.3d at 642.

> ### B. Because the FWA's Crime-Tort Exception Applies, the FWA's One-Party Consent Rule Does Not Bar Plaintiffs' Claims

Defendant's argument that the FWA cannot apply because Defendant was a party to Plaintiffs' Website Communications is legally incorrect. Mem. at 9. As a matter of law, whether Defendant was a "party" to Plaintiffs' communications with Defendant's Website has no bearing on Defendant's liability under the FWA. That is because the FWA explicitly provides that the FWA's one-party consent rule does *not* apply if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). "Courts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception under the [FWA]." *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273, at *12 (N.D. Ill. Feb. 21, 2025); *see also Kane v. University of Rochester*, No. 23-cv-6027-FPG, 2024 U.S. Dist. LEXIS 48515, at *7 (W.D.N.Y. Mar. 19, 2024) (crime-tort exception applied to HIPAA violations); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 719 (same).[3]

Defendant does not, presumably because it cannot, identify any authority that supports its demand that this Court break new legal ground in this Circuit by dismissing Plaintiffs' FWA claim based on the one-party consent rule. Instead, Defendant advances three meritless arguments for

---

[3] *See also B.N. v. Or. Reprod. Med., LLC*, No. 3:25-cv-00202, 2025 U.S. Dist. LEXIS 222638, at *11–12 (D. Or. Nov. 12, 2025); *Strong v. LifeStance Health Grp. Inc.*, No. 23-00682, 2025 U.S. Dist. LEXIS 14601, at *5 (D. Ariz. Jan. 27, 2025); *Castillo v. CostCo Wholesale Corp.*, No. 2:23-cv-01548, 2024 U.S. Dist. LEXIS 207197, at *7 (W.D. Wash. Nov. 14, 2024); *Gay*, 2024 U.S. Dist. LEXIS 168515 at *3–4; *Sweat v. Houston Methodist Hosp.*, No. H-24-775, 2024 U.S. Dist. LEXIS 108806, at *4 (S.D. Tex. June 20, 2024).

why the FWA's crime-tort exception should not apply, each of which can be easily brushed aside. *First*, Defendant incorrectly asserts that none of the information Defendant disclosed to third parties is subject to HIPAA. *Second*, Defendant wrongly insists that any violation of HIPAA must be independent of Defendant's interception of Plaintiffs' private health information, and then inaccurately asserts that Plaintiffs have not alleged any independent acts. And *third*, Defendant baselessly argues that it could not have committed a tort because its primary purpose in disclosing Plaintiffs' private health information was financial gain.

        1.      *Defendant's Disclosure of Plaintiffs' Health Information Violated HIPAA*

HIPAA prohibits covered entities, like Defendant, from "knowingly . . . disclos[ing] individually identifiable health information to another person." 42 U.S.C.A. § 1320d-6(a). "Individually identifiable health information" ("IIHI") is defined as:

> a subset of health information . . . [that] (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) That identifies the individual; or (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

45 C.F.R. § 160.103. Defendant takes issue only with two of these requirements (Mem. at 9–10, 15–17): first, that the information relates to the "physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual," and, second, that the at-issue information either "identifies the individual" or "can be used to identify the identify the individual." *Id*.

        a.      Plaintiffs allege the interception of their health information.

With respect to the first disputed element – whether the information is health-related – Plaintiffs plainly allege that the at-issue information relates to their health conditions, the provision

of health care, and/or payment for health care. Each Plaintiff alleges the precise way in which they used Defendant's Website and password-protected portal:

- Plaintiff Deidun "visits [Defendant's] Website to access the MyHumana portal, where she searches for providers, views claims and explanations of benefits ('EOBs'), and checks the balance on her monthly over-the-counter benefit card." FAC ¶ 41.

- Plaintiff Gorlin "logged into Defendant's patient portal, where he searched for providers, checked the status of claims, and filled and researched prescriptions." *Id.* ¶ 42.

- Plaintiff Jewell "accessed the MyHumana portal to search for providers, view claims, copayments, and EOBs, verify billing accuracy, and research prescriptions." *Id.* ¶ 43.

- Plaintiff MacIntyre accessed the portal "to search for providers, verify whether dentists and providers were in-network, look up medications, and verify copays." *Id.* ¶ 44.

- Plaintiff Payne logged into the "portal to manage her prescriptions, search for providers, obtain prior authorizations, research medications, and view her claims." *Id.* ¶ 45.

Plaintiffs further allege that the tracking technologies "load immediately on both public-facing pages of Defendant's Website and within purportedly secure portals" and track *every* interaction with Defendant's Website and portal. FAC ¶ 11. Accordingly, Plaintiffs allege that each interaction related to their health conditions, health care, and payment for health care was tracked and transmitted to third parties.[4]

Despite these *highly* detailed factual allegations, Defendant baselessly asserts that "there is no way to discern whether any Plaintiff shared anything that might meet the definition of IIHI." Mem. at 10. But this assertion is easily refuted, as the information Plaintiffs allege they shared easily meets this definition. *Compare, e.g.*, FAC ¶¶ 41–45 *with* 45 C.F.R. § 160.103. Again,

---

[4] To the extent Defendant wishes to argue that its disclosures of Plaintiffs' protected information are exempt from HIPAA due to "written business associate contract[s]" between Defendant and the Third-Party Vendors (Mem. at 9 n.4), that argument cannot be resolved on a motion to dismiss. *See Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2015) ("Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings."). Plaintiffs make no reference to these supposed contracts in the FAC, and Defendant offers no basis on which the Court could rely on them in deciding this motion.

Defendant's insistence that, to state a claim, Plaintiffs must allege each keystroke, word, and medical condition that they entered over several years is fundamentally inconsistent with Rule 8 and the Sixth Circuit's governing notice-pleading standard. *E.g.*, *Luis*, 833 F.3d at 642.

Indeed, courts routinely find allegations similar to Plaintiffs' sufficient to establish that disclosed information is protected by HIPAA. In *Kane*, for example, the court concluded that plaintiffs' allegations that they accessed the defendant's website to schedule appointments and manage their healthcare. 2024 U.S. Dist. LEXIS 48515, at *15–16. Similarly, in *M.R. v. Salem Health Hosps. & Clinics*, No. 6:23-cv-01691, 2024 U.S. Dist. LEXIS 155513, at *3–4 (D. Or. Aug. 28, 2024), the court deemed allegations that a plaintiff "used Defendant's web portal and their website . . . to research medical symptoms, search for doctors, make appointments, and check medical records" sufficient to allege a HIPAA violation. *See also Vriezen*, 2025 U.S. Dist. LEXIS 211708, at *15–16 (appointment scheduling information was protected); *Theys v. Dental Intel., Inc.*, No. 25-cv-2464, 2026 U.S. Dist. LEXIS 46654, at *19–22 (N.D. Ill. Mar. 6, 2026) (same). Many other courts agree.[5]

Defendant's authorities are easily distinguished. *Wright v. TrueCare Property Holdings, LLC*, No. 25-cv-786, 2025 U.S. Dist. LEXIS 229707, *6–7 (S.D. Cal. Nov. 21, 2025), involved threadbare allegations that a plaintiff visited a defendant's website and entered search terms that were unrelated to health care. Similarly, in *Santoro v. Tower Health*, the plaintiff alleged that he made "requests for information" on a health care provider's website, and no more. No. 22-4580, 2024 U.S. Dist. LEXIS 74348, at *10 (E.D. Pa. April 24, 2024) (appeal pending). These facts differ sharply from Plaintiffs' allegations about the precise ways in which they used Defendant's Website

---

[5] *E.g. Lugo v. Inova Health Care Servs.*, No.1:24-cv-700, 2025 U.S. Dist. LEXIS 55590, at *18 (E.D. Va. March 25, 2025); *Aspen Dental*, 2024 U.S. Dist. LEXIS 161090, at *3.

and portal to manage their healthcare, including to pay bills, view claims relating to specific medical procedures, fill prescriptions, and obtain authorizations. FAC ¶¶ 41–45.

Defendant's remaining cases all involve plaintiffs who solely allege that they visited *publicly accessible* web pages. *See Nienaber v. Overlake Hosp. Medical Ctr.*, 733 F. Supp. 3d 1072, 1083 (W.D. Wash. 2024) (dismissing plaintiff's claims for failure to allege that she used the defendant's secure portal); *Hannant v. Culbertson,* No. 4:24-cv-04164, 2025 U.S. Dist. LEXIS 161412, at *13 (C.D. Ill. Aug. 20, 2025), *5 (C.D. Ill. Aug. 20, 2025) (similar); *Nguyen v. Abbott Laboratories, Inc.*, No. 24-cv-8289, 2025 U.S. Dist. LEXIS 153248, at *5 (N.D. Ill. Aug. 8, 2025), *5 (N.D. Ill. Aug. 8, 2025). But as the court in *Nienaber* acknowledged, "transmission of information submitted to a *private patient portal*—such as a user clicking on the 'log in' button on that webpage—reveals patient status, which in and of itself is protected health information." 733 F. Supp. 3d at 1081–82 (original emphasis).

Defendant attempts to distinguish *Nienaber* on the ground that, because Defendant is an insurer, logging into Defendant's portal would not "reveal [Plaintiffs'] status as a patient of any particular health care provider." Mem. at 11. But because HIPAA prohibits the disclosure of any information regarding "the past, present, or future payment for the provision of health care to an individual," 45 C.F.R. § 160.103, that is a distinction without a difference. Indeed, Plaintiffs' status as Defendant's insureds indisputably relates to "the past, present, or future payment for the provision of health care," and therefore the act of clicking a "log in" button and identifying as an insured is unquestionably information that HIPAA protects. *Id.*; *see also Theys*, 2026 U.S. Dist. LEXIS 46654, at *34 (disclosure of "[the plaintiffs'] insurance providers" violated HIPAA). Further, HIPAA acknowledges that "[e]nrollment and disenrollment in a health plan" and "[e]ligibility for a health plan" is information subject to HIPAA, and can be shared only "between

13

two parties to carry out financial or administrative activities related to health care," 45 C.F.R. § 160.103. Here, Plaintiffs allege far more – that their private health information, including status as Defendant's insureds, was shared with third parties so that Defendant and the third parties could profit. FAC ¶¶ 183, 222, 227, 243, 425–428.

> b.    Plaintiffs allege that the at-issue data is individually identifiable.

Plaintiffs expressly, and repeatedly, allege that Defendant intercepted and disclosed to third parties individually identifiable information – including Plaintiffs' names, email addresses, phone numbers, and assigned user IDs. *E.g.*, FAC ¶¶ 240–241 (describing assignment of user IDs), 247.[6] By way of example, Plaintiffs allege that ForeSee provides "real-time tracking of user interactions across the Website, including personally identifiable information like name, email address, and phone number." FAC ¶ 247. Plaintiffs further allege that Adobe intercepts URLs that capture a user's "full and exact search term[s]," *id.* ¶ 237, and that various Third-Party Vendors, including Adobe and Tealium, embed cookies on Plaintiffs' browsers, enabling them "to persistently identify and monitor the insured across sessions or pages, and to build a behavioral profile with a specific audience, a current visit ID, and an ID from past sessions[.] *Id.* ¶¶ 226, 239; *cf. Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) ("Many types of information other than a name can easily identify a person."). This information is indisputably individually identifiable under HIPAA. 45 C.F.R. § 164.514(b)(2)(A–R).

In arguing that such information is not individually identifiable, Defendant solely relies on

---

[6] Under 45 C.F.R. § 164.514(b)(2), "[a] covered entity may determine that health information is not individually identifiable health information only if" certain listed identifiers are removed. 45 C.F.R. § 164.514(b)(2). These include "names," "email addresses," "[h]ealth plan beneficiary numbers," "[a]ccount numbers," "[d]evice identifiers and serial numbers," "Web Universal Resource Locators (URLs)," "Internet Protocol (IP) address numbers," and "[a]ny other unique identifying number, characteristic, or code[.]" 45 C.F.R. § 164.514(b)(2)(A-R).

14

inapposite out-of-Circuit cases that do not involve HIPAA at all. Mem. at 16–17; *cf. In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 286 (3d Cir. 2016) (concerning Video Privacy Protection Act); *Griffith v. TikTok, Inc.*, No. 23-cv-00964, 2024 U.S. Dist. LEXIS 176403, at \*2 (C.D. Cal. Sept. 9, 2024) (analyzing identifiable information in a non-HIPAA context). But courts that have considered HIPAA have reached different conclusions. *See, e.g.*, *Doe v. Google*, No. 23-cv-02431, 2025 U.S. Dist. LEXIS 108376, at \*9 (N.D. Cal. June 6, 2025) (IP addresses were individually identifiable information "under the plain language" of 45 C.F.R. § 164.514(b)(2)); *Gaige v. Exer Holding Co., LLC*, No. 24-cv-6099, 2025 U.S. Dist. LEXIS 17146, at \*12 (C.D. Cal. Jan. 30, 2025) (an IP address and other user information "was personally identifiable"); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024) (similar).

2.    *There Is No Statutory Basis for a "Independent Act" Requirement, and, in any Event, Plaintiffs Allege Independent Acts*

Relying solely on out-of-Circuit cases, Defendant insists that this Court create new law by dismissing Plaintiffs' FWA claim because Plaintiffs purportedly fail to allege "that Humana caused the interception . . . for the purpose of committing a crime or tort *separate* from the act of the interception itself." Mem. at 17 (emphasis added). But nothing in the FWA requires a crime or tort to be an "independent act" from an interception. *See* 18 U.S.C. § 2511(2)(d). Instead, the text of the crime-tort exception merely instructs that the violation of the FWA *itself* cannot support the invocation of the exception.

Courts across the country have concluded that a violation of HIPAA is sufficient to invoke the FWA's crime-tort exception set forth in 18 U.S.C. § 2511(2)(d). *See, e.g.*, *Lugo*, 2025 U.S. Dist. LEXIS 55590 at \*18 ("Courts around the country, however, have permitted the invocation of the [FWA's] crime-tort exception when plaintiffs allege violations of HIPAA and other state health

15

privacy laws.").[7] That is because, fundamentally, "[a] disclosure that violates HIPAA is a violation of law that is independent of a violation of the [FWA]." *Stein*, 2025 U.S. Dist. LEXIS 31273 at *10–11 (collecting cases).[8] Defendant's argument to the contrary is groundless.

Moreover, even if the FWA were interpreted to require an "independent act" (and it should not be), Plaintiffs' allegations would easily clear this threshold. Among other things, Plaintiffs allege that Defendant (i) placed tracking technology on its Website and portal for the purpose of obtaining Plaintiffs' private health information, and then (ii) disclosed insureds' private health information to third parties for Defendant's financial gain. *See, e.g.*, FAC ¶¶ 12, 183, 399. Those out-of-Circuit courts that have considered whether plaintiffs alleged an "independent" act have concluded that materially identical allegations plausibly allege a "separate act." In *A.D. v. Aspen Dental Management*, for example, the district court applied the FWA's crime-tort exception when "[the defendant] placed tracking technology on its website with the intent to collect and disclose users' personal health information for purposes of financial gain, in violation of HIPAA." *Aspen Dental*, 2024 U.S. Dist. LEXIS 161090, at *7. Similarly, in *Brahm v. Hospital Sisters Health Systems*, the court concluded that the crime-tort exception applied when the plaintiff alleged that the "defendants here violated [HIPAA] by embedding tools on their seemingly private and confidential websites, automatically rerouting patients' PII/PHI to others for their unauthorized use." *Brahm v. Hosp. Sisters Health Sys.*, No. 23-cv-444, 2024 U.S. Dist. LEXIS 114827, at *12–13 (W.D. Wis. June 28, 2024). In so ruling, the court held that "the disclosure and use of patient

---

[7] *See also, e.g.*, *Hartley v. Univ. of Chi. Med. Ctr.*, No. 22 C 5891, 2024 U.S. Dist. LEXIS 78517, at *2–3 (N.D. Ill. Apr. 30, 2024) (allegation of HIPAA violation sufficient to invoke crime-tort exception); *Smith v. Loyola Univ. Med. Ctr.*, No. 23-cv-15828, 2024 U.S. Dist. LEXIS 119995, at *18 (N.D. Ill. July 9, 2024) (same); *Murphy v. Thomas Jefferson Univ. Hosps., Inc.*, No. 22-4674, 2024 U.S. Dist. LEXIS 177625, at *11 (E.D. Pa. Sept. 30, 2024) (same).
[8] *See also, e.g.*, *Aspen Dental*, 2024 U.S. Dist. LEXIS 161090, at *7; *Brahm*, 2024 U.S. Dist. LEXIS 114827 at *13–14.

data for advertising, marketing, and revenue generation without [the patients'] express written consent" was separate from the act of embedding tracking technologies on the defendant's website. *Id.* at \*16. *See also Doe v. Wellstar Health Sys., Inc.*, 799 F. Supp. 3d 1268, 1278–79 (N.D. Ga. 2025) (similar).

Defendant nevertheless insists that the FWA's crime-tort exception includes an atextual temporal requirement – according to Defendant, the criminal or tortious act must occur *after* the act of interception. *See* Mem. at 18. In doing so, Defendant "conflates the crime-tort exception's 'separate and independent' component with its 'temporal' component." *R.S. v. Prime Healthcare Services*, No. 5:24-cv-00330, 2025 U.S. Dist. LEXIS 6338, at \*17 (C.D. Cal. Jan. 13, 2025). "It is irrelevant that [a defendant] allegedly disclosed the [p]rivate information at the same time as its interception." *Id*. The only question is whether "the intercepting party . . . 'ha[d] the independent criminal or tortious purpose *at the time* the [interception] was made." *Id*. (quoting *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022)) (original emphasis); *see also Wellstar Health Sys.*, 799 F. Supp. 3d at 1278–79 (similar).[9] Plaintiffs' allegations that Defendant intercepted their health information in order to disclose that information in violation of HIPAA for financial gain indisputably satisfies this requirement.

> 3.   *Plaintiffs Plausibly Allege that Defendant Disclosed Their Private Health Information for a Tortious Purpose*

Defendant's argument that the crime-tort exception can only apply if Defendant's "'primary motivation' or the 'determinative factor'" in using the tracking technologies was to violate the law is similarly legally incorrect. Mem. at 19 (citation omitted). To be clear: Defendant

---

[9] *Caro v. Weintraub*, relied on by Defendant (Mem. at 17), stands for this proposition. 618 F.3d 94, 99–100 (2d Cir. 2010). In *Caro*, the court held that "[a]t the time of the recording the offender must intend to use the recording to commit a criminal or tortious act." *Id*. *Caro* never states that the criminal or tortious act cannot occur simultaneously to the interception itself.

insists that it could not have acted with "the *purpose* of violating HIPAA or invading [Plaintiffs'] privacy" because its primary purpose was to make money. *Id.* (original emphasis). Mem. at 20. But "[t]hat approach seems difficult to square with the FWA's statutory text." *Stein*, 2025 U.S. Dist. LEXIS 31273 at *14. "A party does not have to say, in effect, 'I want to commit a crime,' or 'today is a great day to commit a tort.'" *Id.* Instead, a defendant's purpose merely must be to

> commit[] any criminal or tortious *act*. Separating the adjectives from the noun might shed a little light. The purpose must be to commit an act, and that act must be criminal or tortious. If the purpose is to do X, and if X is a crime or a tort, then the crime-tort exception to the one-party consent rule applies. A desire to commit a crime *qua* crime, or a tort *qua* tort, isn't necessary.

*Id.* (internal citations omitted) (emphasis in original). Defendant thus may have been motivated by a desire for financial gain – although that is a fact question that cannot be adjudicated on a motion to dismiss. But "[t]he existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime—it was to make money." *Stein*, at *16; *see also B.N.*, 2025 U.S. Dist. LEXIS 222638 at *11 ("Crimes and torts often have financial motivations, and the statutory text broadly covers 'any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'"). In other words, a "lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose." *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999).

Here, Plaintiffs allege that Defendant "'knowingly' disclos[ed] 'individually identifiable health information' to third parties" in violation of HIPAA. FAC ¶ 399. Plaintiffs further allege that Defendant acted with the intent to commit an act that violated HIPAA. *Id.* Whether Defendant was primarily motivated by financial gain is irrelevant. *See Stein*, 2025 U.S. Dist. LEXIS 31273 at *16–17; *see also Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 383 (S.D.N.Y. 2024) (the "theory that the presence of a primary financial motive inoculates a defendant from

18

liability under the [FWA] is wrong.").[10]

Furthermore, even if the FWA included some requirement that a defendant's "primary motivation" be to commit criminal or tortious acts, courts have *still* found materially identical allegations sufficient to satisfy this requirement. In *Brahm*, for example, the court found that that "[the] defendants' primary motivation in intercepting and disclosing patients' PII/PHI was to commit wrongful and tortious acts – namely, the disclosure and use of patient data for advertising, marketing, and revenue generation without their express written consent." 2024 U.S. Dist. LEXIS 114827, at *16. Similarly, in *In re Group Health Plan Litigation*, the court concluded that the defendant's "primary motivation in HealthPartners' interception and disclosure was to commit wrongful and tortious acts, namely, the use of patient data for advertising in the absence of express written consent, and the use for marketing and revenue generation was in violation of HIPAA and an invasion of privacy." 709 F. Supp. 3d at 719–20.[11]

## II.     Plaintiffs Have Stated a Claim for Intrusion Upon Seclusion

There can be no serious dispute that Plaintiffs have plausibly alleged an intrusion upon seclusion claim. The Kentucky Supreme Court has adopted the Restatement rule for intrusion upon

---

[10] *See also Jarrett v. Upperline Health, Inc.*, No. 23-cv-01261, 2025 U.S. Dist. LEXIS 219352, at *31–32 (S.D. Ind. Aug. 8, 2025); *Murphy*, 2024 U.S. Dist. LEXIS 177625, at *5 ("But the plaintiffs need not plead financial motive to invoke the crime-tort exception as they have already sufficiently pleaded the defendant's intention to violate HIPAA. The plaintiffs' [FWA] claim will proceed.") (cleaned up); *R.C. v. Walgreen Co.*, No. 23-cv-1933, 2024 U.S. Dist. LEXIS 84744, at *15 (C.D. Cal. May 9, 2024).

[11] If it were necessary to establish a "primary motivation" to satisfy the crime-tort exception, that question would be best suited to summary judgment. *See Brahm*, 2024 U.S. Dist. LEXIS 114827, at *16 (primary motivation question is "more appropriately addressed at summary judgment after the record has been more fully developed."). Indeed, the one in-Circuit case Defendant cites addressing the "primary motivation" question was a summary judgment decision, which did not, in any event, involve web tracking or HIPAA-protected information. *See AFT Mich. v. Project Veritas*, No. 17-cv-13292, 2026 U.S. Dist. LEXIS 67680, at *23–26 (E.D. Mich. March 30, 2026).

seclusion, which provides that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981). This is, as described above, the crux of Plaintiffs' allegations; Defendant's argument that Plaintiffs have nevertheless failed to plead an intrusion upon seclusion claim is entirely without merit and inexplicably ignores the FAC's extensive allegations concerning Defendant's conduct.

*Luis* is again instructive.[12] There, the Sixth Circuit held that the plaintiff adequately pleaded intrusion upon seclusion where he alleged "a reasonable expectation of privacy in his exchanges of electronic communications," because "[n]othing in the complaint suggests that Luis [] expected other people to monitor these communications, nor does [defendant] contend that any other person had a legitimate reason to access these exchanges." *Luis*, 833 F.3d at 642. Plaintiffs allege the same kind of intrusion here: they allege that Defendant embedded tracking and session-replay technologies on its Website and in its MyHumana portal that secretly captured Plaintiffs' health-related searches, prescription activity, claims activity, keystrokes, clicks, and portal interactions and transmitted them to third-party vendors. FAC ¶¶ 186–264. A reasonable person would find the surreptitious tracking and disclosure of private healthcare communications highly offensive, and none of the Plaintiffs expected this tracking to occur. *Id.* ¶¶ 287–321 (describing misleading disclosures by Defendant), 418–419 ("The conduct of Defendant involved the most private domain of all: Plaintiffs' health-related decisions and conditions inside a purportedly secure portal."). That

---

[12] Although *Luis* applied Ohio law, its reasoning fits Kentucky law because both states require a wrongful intrusion into private affairs in a manner that would be highly offensive to a reasonable person. *Compare McCall*, 623 S.W.2d at 887 *with Welling v. Weinfeld,* 866 N.E.2d 1051, 1053 (Ohio 2007) (*"*wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities").

is more than sufficient to plead intrusion upon seclusion.

Moreover, Defendant's assertion that the at-issue intrusion was performed by third parties, and not by Defendant (Mem. at 22), is directly contrary to the FAC's allegations. To be clear: the FAC alleges that Defendant implemented third-party tracking technology into the Website, used that technology to intercept Plaintiffs' private health data, and surreptitiously transmitted that private health data to third parties. *E.g.*, FAC ¶¶ 417–19. This is exactly the kind of "intentional intru[sion] . . . upon the solitude or seclusion of another or his private affairs or concerns" that the tort of intrusion upon seclusion is meant to remedy. *McCall*, 623 S.W.2d at 887; *see also Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 822 (W.D. Ky. 2003) (denying summary judgment on intrusion upon seclusion claim as to whether accessing of private consumer report was intentional). Indeed, *numerous* courts have permitted intrusion upon seclusion claims to proceed against website providers that installed tracking technologies that disclosed private health information to third parties. *See*, *e.g.*, *Salem Health*, U.S. Dist. LEXIS 155513, at *16 (D. Or. Aug. 28, 2024) (denying motion to dismiss intrusion upon seclusion claim in part because "Plaintiff alleges that she voluntarily disclosed PHI to Defendant as a part of the patient-physician relationship, but never intended Google and Facebook to receive it"); *Doe v. Shady Grove Reprod. Sci. Ctr., P.C.*, No. 24-cv-2368, 2025 U.S. Dist. LEXIS 192453, at *11–18 (D. Md. Sept. 30, 2025) (denying motion to dismiss intrusion upon seclusion claim when healthcare provider used tracking technologies on website that collected plaintiffs' private health information); *In re Group Health Plan Litig.*, 709 F. Supp. 3d at 713–14 (denying motion to dismiss intrusion upon seclusion claim "HealthPartners deliberately integrated Facebook Pixel and CAPI into its Website and servers, which intercepted and shared communications with third parties, including Facebook") (cleaned

21

up).[13]

Defendant then reiterates its argument that Plaintiffs have not alleged that "any of *their* data intercepted by third parties revealed anything personal or sensitive about them[.]" Mem. at 22 (emphasis original). But, as detailed above, Plaintiffs *extensively* allege that Defendant configured their Website and password-protected portal to track *every single user interaction* and transmit it, in real time, to undisclosed third parties. *E.g.*, FAC ¶¶ 316–321 (describing how insured's diabetes searches are tracked by Google Analytics for marketing). The information Defendant allegedly disclosed to third parties includes, among others, Plaintiffs' searches for providers, medication refills, payment of medical claims, and efforts to obtain pre-authorizations. *Id.* ¶¶ 211–214 (Zoloft medication search and Ozempic prescription disclosed to Coveo), 236 (name of mental health counselor disclosed), 253 (searches disclosed), 260–264 (all activity disclosed to Quantum Metric). All of that information is inherently highly sensitive. *See Salem Health*, 2024 U.S. Dist. LEXIS 155513, at *16 ("Congress and courts have consistently noted that personal medical information is among the most sensitive information that could be collected about a person, and the existence of many statutes like HIPAA . . . regulating its disclosure supports this idea."). Further, the single out-of-Circuit district court case Defendant cites for the proposition that website browsing does not constitute highly sensitive information, *Cook v. GameStop, Inc.*, did not involve *any* allegations of the disclosure of information protected by HIPAA. 689 F. Supp. 3d 58, 72 (W.D. Pa. 2023). As the court made clear in *Cook*, its decision turned entirely on the fact that the plaintiff

---

[13] *See also Vriezen*, 2025 U.S. Dist. LEXIS 211708, at *22–23 (permitting intrusion upon seclusion claim to proceed in wiretapping action against healthcare website provider who implemented tracking technologies on website that tracked and disclosed PHI); *Theys*, 2026 U.S. Dist. LEXIS 46654, at *19–22 (permitting invasion of privacy claim to proceed in action against website provider who installed tracking technologies on website that tracked and disclosed users' personal health information).

was merely browsing a store's public website. *Id*. at 66 ("At most, the information that GameStop intercepted related to her product preferences. Product preference information is not personal information."). *Cook* has no bearing whatsoever on this case, which alleges the disclosure of personal *health* information, a type of information that is "inherently private." *Thakkar v. Ocwen Loan Servicing*, No. 15-10109, 2019 U.S. Dist. LEXIS 83250, at *13 (N.D. Ill. May 17, 2019); *see also Silveira v. Commercial Specialty Truck Holdings, LLC*, No. 25-048, 2025 U.S. Dist. LEXIS 155058, at *16–17 (E.D. Ky. Aug. 12, 2025) (allegations that health information was disclosed in a data breach sufficient to state a claim for intrusion upon seclusion under Kentucky law).

## III.    Plaintiffs Have Stated a Claim for Unjust Enrichment

Defendant's argument that Plaintiffs fail to plausibly allege an unjust enrichment claim similarly cannot be reconciled with the FAC's allegations. To state an unjust enrichment claim, a plaintiff must allege "'(1) [a] benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of [the] benefit by defendant; and (3) inequitable retention of [the] benefit without payment for its value.'" *Furlong Dev. Co., LLC v. Georgetown-Scott County Planning & Zoning Commission*, 504 S.W.3d 34, 39-40 (Ky. 2016) (citation omitted).

Plaintiffs allege each of these elements. *First*, Plaintiffs allege that they conferred two kinds of benefits on Defendant: (1) the payment of their insurance premiums and (2) the provision of their valuable personal health-related information to Defendant via the Website and portal. FAC ¶ 425. *Second*, Plaintiffs allege that Defendant realized the benefit conferred "by covertly collecting, using, and sharing the personal health-related data of Plaintiffs with third parties" in order "to generate profits through targeted advertising and the sale or use of the data by third parties[.]" *Id*. ¶¶ 426–27. *Third*, Plaintiffs allege that Defendant inequitably retained the benefits by failing to compensate Plaintiffs in any manner. *Id*. ¶ 424.

Because Defendant cannot seriously dispute that the FAC alleges facts that satisfy each of these elements, Defendant again insists that the FAC fails to allege that Defendant intercepted Plaintiffs' health information, and that this is fatal to Plaintiffs' unjust enrichment claim. Mem. at 24. But as discussed above, Plaintiffs *extensively* allege the collection and disclosure of their specific protected health information.[14] *E.g.*, FAC ¶¶ 41–45, 183–264. Because Plaintiffs have alleged that their specific IIHI was collected and disclosed for Defendant's financial benefit, Plaintiffs state a claim for unjust enrichment. *See Salem Health*, 2024 U.S. Dist. LEXIS 155513, at *19–20 (permitting unjust enrichment claim to proceed past motion to dismiss when plaintiff "allege[d] that the benefit conferred was medical information of patients; that [the d]efendant took affirmative steps to collect it; and that it would be unjust for [the d]efendant to retain the benefit from selling this information to advertisers"); *see also Vriezen*, 2025 U.S. Dist. LEXIS 211708, at *27–29 (denying motion to dismiss unjust enrichment claim when plaintiffs "allege[d] that [the defendant] received a benefit by monetizing [the p]laintiffs' PHI and PII and unjustly retained those benefits at [the p]laintiffs' expense[.]") (cleaned up); *In re Group Health Plan Litig.*, 709 F. Supp. 3d at 715 (unjust enrichment claim permitted to proceed where plaintiffs alleged website provider tracked and disclosed their PHI to third parties for a monetary benefit).[15]

---

[14] Significantly, Defendant concedes that, if the information Plaintiffs allege Defendant intercepted *is* IIHI within the meaning of HIPAA, Plaintiffs have alleged harm sufficient to support an unjust enrichment claim. Mem. at 24 ("These types of vague assertions of loss are not sufficient to support a claim for unjust enrichment where the Plaintiffs have failed to allege what of their information was actually intercepted.").

[15] Though these cases apply the laws of states other than Kentucky, the elements of unjust enrichment claims do not vary significantly between states. *See Keilholtz v. Lennox Health Products*, 268 F.R.D. 330, 341–42 (N.D. Cal. 2010) (noting that "the variations among some states' unjust enrichment laws are not material because they do not significantly alter the central issue or the manner of proof in this case"); *see also Unifund CCR Partners v. Harrell*, 509 S.W.3d 25, 28 (Ky. 2017) (Kentucky courts may consider federal cases as persuasive authority).

Finally, Defendant's baseless assertion that it disclosed the use of tracking technologies on its Website, and that Plaintiffs therefore knew when they purchased Defendant's insurance that they would be subject to tracking on Defendant's Website, is entirely unfounded. Mem. at 24–25. To be clear: Defendant affirmatively represented to its Website users that it would "*only* use your sensitive Personal Information to provide you with the requested products or services and to administer your account." FAC ¶ 270. Defendant also expressly promised that it would not disclose *any* information to third parties except with insureds' written authorization. *Id.* ¶ 274. These affirmative representations of a commitment to privacy differ dramatically from the allegations in *Tash v. Vision Service Plan*, cited by Defendant (Mem. at 25), in which the plaintiffs did not allege a single such affirmative representation by the defendant. No. 25-cv-00762, 2026 U.S. Dist. LEXIS 81761, at *15–16 (E.D. Cal. April 14, 2026) (allegations insufficient when plaintiffs alleged that they subjectively believed website services included data privacy and they "[did] not allege this belief stemmed from any representations by [the d]efendant about their [website]").

## IV.  Plaintiffs Have Stated a Claim for Breach of Fiduciary Duty

Defendant's sole basis for urging dismissal of Plaintiffs' breach of fiduciary duty claim is that Defendant did not collect Plaintiffs' IIHI. *See* Mem. at 21. But as discussed at length above, under the plain language of HIPAA, the FAC *extensively* alleges that Defendant intercepted and disclosed Plaintiffs' IIHI. *See* FAC ¶¶ 41–45, 183–264. Because Plaintiffs plausibly allege that Defendant tracked and disclosed their IIHI in violation of HIPAA, Plaintiffs' breach of fiduciary claim should proceed.

**CONCLUSION**

Defendant's motion to dismiss should be denied in its entirety.

25

Dated: June 1, 2026

Respectfully submitted,

/s/ Andrew D. Schlichter
Andrew D. Schlichter (admitted *pro hac vice*)
Alexander L. Braitberg (admitted *pro hac vice*)
Chen Kasher (admitted *pro hac vice*)
Cort VanOstran (admitted *pro hac vice*)
SCHLICHTER BOGARD LLC
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
(314) 621-6115
(314) 621-5934 (fax)
aschlichter@uselaws.com
abraitberg@uselaws.com
ckasher@uselaws.com
cvanostran@uselaws.com

Zoe E. Seaman-Grant
SCHLICHTER BOGARD LLC
33 N Dearborn, Suite 1170
Chicago, IL 60602
(630) 919-9301
zseamangrant@uselaws.com

*Lead Counsel for Plaintiffs*

Jerome Prather
GARMER & PRATHER, PLLC
141 North Broadway
Lexington, KY 40507
(859) 254-9351
jprather@garmerprather.com
*Local Counsel for Plaintiffs*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of June 2026, a true and correct copy of the foregoing document was filed via the Court's CM/ECF filing system and will be available to all counsel of record.

/s/ Andrew D. Schlichter
Andrew D. Schlichter

27