# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

|  |  |
|---|---|
| NICOLE DEIDUN, ELLIOT GORLIN, KELLY JEWELL, NANCY MACINTYRE, and MARY PAYNE, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>HUMANA, INC.,<br><br>    Defendant. | Case No. 3:26-CV-00054-GNS |

---

## DEFENDANT HUMANA INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

---

June 15, 2026

<table>
<tr><td>

KAPLAN JOHNSON ABATE & BIRD LLC
Michael P. Abate (KY Bar No. 95259)
mabate@kaplanjohnsonlaw.com
710 West Main Street, 4th Floor
Louisville, KY 40202
Telephone: (502) 540-8280
*Attorneys for Defendant Humana Inc.*

</td><td>

SEYFARTH SHAW LLP
Kathleen C. Tranter (KY Bar No. 95316)
ktranter@seyfarth.com
Kristine R. Argentine (pro hac vice)
kargentine@seyfarth.com
Paul Yovanic, Jr. (pro hac vice)
pyovanic@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
*Attorneys for Defendant Humana Inc.*

</td></tr>
</table>

ORAL ARGUMENT REQUESTED

326476583v.3

**TABLE OF CONTENTS**

**Page**

I.      PLAINTIFFS HAVE NOT ALLEGED THE INTERCEPTION OF THEIR OWN
        HIPAA-PROTECTED INFORMATION, WHICH IS AN OVER-ARCHING
        GROUND FOR DISMISSAL OF ALL CLAIMS............................................................. 1

        A.      Plaintiffs Have Not Alleged What of Their Own Information Was
                Intercepted........................................................................................................... 1

        B.      Plaintiffs Have Not Alleged That Any of the Information in Question is
                Identifiable. ........................................................................................................ 5

        C.      Plaintiffs Have Not Sufficiently Alleged that the Information in Question
                is Related to Any Plaintiff's Health Conditions or Treatment............................... 7

II.     PLAINTIFFS HAVE OTHERWISE NOT ALLEGED FACTS SUFFICIENT TO
        INVOKE THE CRIME-TORT EXCEPTION TO THE FWA........................................ 9

        A.      Plaintiffs Have Not Alleged a Violation of HIPAA. ........................................... 10

        B.      Federal Courts Generally Recognize an "Independent Act" Requirement
                and Plaintiffs Have Failed to Allege an Independent Act..................................... 10

        C.      Plaintiffs Have Not Alleged that Humana Installed Tracking Technologies
                for the Purpose of Violating HIPAA. ................................................................. 11

III.    PLAINTIFFS HAVE FAILED TO ALLEGE THE INTERCEPTION OF THE
        CONTENT OF THEIR COMMUNICATIONS............................................................ 12

IV.     PLAINTIFFS HAVE NOT ALLEGED A BREACH OF FIDUCIARY DUTY ............. 13

V.      PLAINTIFFS CANNOT ALLEGE INTRUSION UPON SECLUSION
        BECAUSE PLAINTIFFS CAN HAVE NO EXPECTATION OF PRIVACY IN
        THE INFORMATION IN QUESTION........................................................................ 13

VI.     PLAINTIFFS CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT
        BECAUSE PLAINTIFFS DO NOT CLAIM TO HAVE SUFFERED ANY
        HARM OR LOSS. ..................................................................................................... 15

VII.    CONCLUSION.......................................................................................................... 15

326476583v.3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ..................................................................................7

*Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*,
502 F.3d 545 (6th Cir. 2007) ..............................................................................................10

*Bishop v. Lucent Techs., Inc.*,
520 F.3d 516 (6th Cir. 2008) ................................................................................................5

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010).............................................................................................10, 11

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023)...................................................................................14

*Doe v. Genesis Health System*,
2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)......................................................................11

*Doe v. Kaiser Foundation Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. April 11, 2024)....................................................................11

*Doe v. Upperline Health, Inc.*,
2024 WL 4953503 (S.D. Ind. Sept. 24, 2024) ......................................................................2

*Fallick v. Nationwide Mutual Insurance Co.*,
162 F.3d 410 (6th Cir. 1998) ................................................................................................1

*Fox v. Saginaw Cnty., Michigan*,
67 F.4th 284 (6th Cir. 2023) .................................................................................................1

*Furlong Dev. Co., LLC v. Georgetown–Scott Cnty. Planning and Zoning Comm.*,
504 S.W.3d 34 (Ky. 2016).................................................................................................15

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Jan. 30, 2025) .........................................................................6

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
806 F.3d 125 (3d Cir. 2015)................................................................................................10

*Goulart v. Cape Cod Healthcare, Inc.*,
2025 WL 1745732 (D. Mass. June 24, 2025) ......................................................................11

ii

*Hannant v. Culbertson,*
　　2025 WL 2413894 (C.D. Ill. Aug. 20, 2025)................................................................1, 2, 3

*Harms v. Chase Home Fin., LLC,*
　　552 S.W.3d 516 (Ky. App. 2018) ....................................................................................15

*Hartley v. University of Chicago Medical Center,*
　　2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ...................................................................14

*J.C. v. Catholic Health System Inc.,*
　　2024 WL 5136236 (W.D.N.Y. Aug. 29, 2024) ..................................................................2

*Kane v. Univ. of Rochester,*
　　2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)...................................................................9

*Kurowski v. Rush System for Health,*
　　683 F. Supp. 3d 836 (N.D. Ill. 2023) .............................................................................14

*Luis v. Zang,*
　　833 F.3d 619 (6th Cir. 2016) .............................................................................12, 13, 14

*M.R. v. Salem Health Hosps. & Clinics,*
　　2024 WL 3970796 (D. Or. Aug. 28, 2024)........................................................................9

*Martinez v. Mentavi, Inc.,*
　　2025 WL 3780427 (W.D. Mich. Oct. 9, 2025).................................................................11

*In re Meta Pixel Healthcare Litigation,*
　　647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................................................................11

*Nguyen v. Abbott Laboratories, Inc.,*
　　2025 WL 2299753 (N.D. Ill. Aug. 8, 2025) ......................................................................2

*Nienaber v. Overlake Hospital Medical Center,*
　　733 F. Supp. 3d 1072 (W.D. Wash. 2024)................................................................2, 3, 11

*Okash v. Essentia Health,*
　　2024 WL 1285779 (D. Minn. Mar. 26, 2024) .................................................................11

*Santoro v. Tower Health,*
　　2024 WL 1773371 (E.D. Pa. April 24, 2024).....................................................................2

*Smith v. Bob Smith Chevrolet, Inc.,*
　　275 F. Supp. 2d 808 (W.D. Ky. 2003)..............................................................................14

*Sussman v. American Broadcasting Companies, Inc.,*
　　186 F.3d 1200 (9th Cir. 1999) .........................................................................................10

326476583v.3

*Theys v. Dental Intelligence, Inc.*,
  2026 WL 636743 (N.D. Ill. March 6, 2026) ................................................................8, 9

*Vriezen v. Infinite Health Collaborative, P.A.*,
  2025 WL 2992204 (D. Minn. Sept. 30, 2025) ...................................................................9

*Wright v. TrueCare Property Holdings, LLC*,
  2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) ...................................................................4

**Statutes**

18 U.S.C.A. § 2511(2)(d) ......................................................................................................10

**Other Authorities**

45 C.F.R. § 160.103 ...............................................................................................................8

326476583v.3

**I.      PLAINTIFFS HAVE NOT ALLEGED THE INTERCEPTION OF THEIR OWN HIPAA-PROTECTED INFORMATION, WHICH IS AN OVER-ARCHING GROUND FOR DISMISSAL OF ALL CLAIMS.**

Each of Plaintiffs' claims is premised entirely on their allegation that Humana allowed third parties to intercept their individually identifiable health information (IIHI), so if their IIHI was not intercepted, then they have no claim that falls within the crime-tort exception to the FWA, which is fatal to their federal wiretap claim. Similarly, without alleging that IIHI was disclosed, Plaintiffs cannot allege a breach of fiduciary duty based on the failure to preserve the confidentiality of their medical information; they cannot allege an intrusion upon their private affairs; and they cannot claim unjust enrichment. When analyzing the allegations as it relates to each Plaintiff and what they specifically allege about their interactions with the website and the technology at issue, it is clear they have failed to sufficiently plead that their IIHI was intercepted and therefore, each of their claims must be dismissed.

**A.      *Plaintiffs Have Not Alleged What of Their Own Information Was Intercepted.***

In support of their argument that they have sufficiently pled these claims, Plaintiffs emphasize their "extensive" allegations—433 paragraphs' worth—regarding the ways the tracking technologies in question work and the information they are capable of transferring in hypothetical situations (*see* dkt. 40, p. 1), but the only allegations that matter are those related to *Plaintiffs themselves*. Named Plaintiffs must, themselves, sufficiently plead their own claims in order to pursue a claim on behalf of a purported class. *See Fox v. Saginaw Cnty., Michigan*, 67 F.4th 284, 298 (6th Cir. 2023), *citing Fallick v. Nationwide Mutual Insurance Co.*, 162 F.3d 410 (6th Cir. 1998) ("individual standing is a prerequisite to class actions."). And Plaintiffs' allegations here regarding their own experiences are inadequate to state a claim because they merely allege what the tracking technologies in question are capable of intercepting, without alleging what of their own information was *actually* intercepted. *See Hannant v. Culbertson*, 2025 WL 2413894 at *5

1

(C.D. Ill. Aug. 20, 2025) ("Here, Plaintiff's allegations of her own experience, as opposed to a potential class member, lack the detail necessary to plausibly invoke the crime-tort exception via a HIPAA violation.").

For instance, in their response, Plaintiffs cite to paragraphs 8 through 16 of the Complaint as containing allegations that Humana disclosed the "health-related communications of Plaintiffs" (dkt. 40, pp. 2-4), but these paragraphs are merely general allegations describing how the tracking technologies in question allegedly work and what Humana allegedly does with the information intercepted. (Dkt. 32, ¶¶ 8-16.) The only one of these allegations that even mentions Plaintiffs is paragraph 9, which amounts to nothing more than a conclusory statement that Humana violated the FWA by "wiretapping the private health-related communications of Plaintiffs . . ." (Dkt. 32, ¶ 9.) Plaintiffs also cite to paragraphs 41 through 45 of their Complaint regarding "the precise way in which they used Defendant's Website and password-protected portal" (dkt. 40, p. 11), but these paragraphs allege the *types* of activities they engaged in (i.e., "searching for providers" and "checking the status of claims") without alleging what information about these activities was allegedly intercepted or how. (Dkt. 32, ¶¶ 41-45.) Such general statements likewise are not sufficient to plead the interception of IIHI. *See, e.g., Nienaber v. Overlake Hospital Medical Center*, 733 F. Supp. 3d 1072, 1083 (W.D. Wash. 2024); *Santoro v. Tower Health*, 2024 WL 1773371, *4 (E.D. Pa. April 24, 2024); *Hannant*, 2025 WL 2413894, *5 (C.D. Ill. Aug. 20, 2025); *Nguyen v. Abbott Laboratories, Inc.*, 2025 WL 2299753, *5 (N.D. Ill. Aug. 8, 2025); *Doe v. Upperline Health, Inc.*, 2024 WL 4953503, *3 (S.D. Ind. Sept. 24, 2024); *J.C. v. Catholic Health System Inc.*, 2024 WL 5136236, *13 (W.D.N.Y. Aug. 29, 2024).

Plaintiffs attempt to distinguish several of these cases by arguing that they involved only publicly-accessible webpages as opposed to secure portals (dkt. 40, p. 13), but *Nienaber* involved

2

326476583v.3

allegations regarding the claimed interception of information inside the defendant's patient portal, as did *Hannant*.[1] In *Nienaber*, the plaintiff alleged that she had "communicate[d] with healthcare professionals," "complete[d] medical forms," and "request[ed] and review[ed] healthcare and billing records" in the patient portal but the court held this was insufficient to allege the disclosure of IIHI because "Plaintiff ma[de] no allegations as to the type of information she provided to Defendant through MyChart or that Defendant transmitted Private Information of hers to third parties through the Private Patient Portal." *Nienaber*, 733 F. Supp. 3d at 1082-1083; *see also Hannant*, 2025 WL 2413894 (similar).

In their "extensive" allegations, Plaintiffs describe different types of "tracking technologies" allegedly used on Humana's website and portal, including "tracking pixels" (*see, e.g.*, dkt. 32, ¶ 108-111) and "session replay code" (*see, e.g.*, dkt. 32, ¶¶ 119-121). Plaintiffs have included several screenshots in their Complaint to demonstrate the ways tracking pixels are allegedly implemented on Humana's website and portal and what information is allegedly transferred as a result thereof. (*See* collection of screen shots, attached as Exhibit 1.) However, contrary to the allegations, very few of these screenshots indicate anything about the substantive information requested or viewed by the hypothetical user whose search is documented. (*Id.*) And, importantly, none of these screenshots show the transfer of any information that might identify the user, as discussed below.

It is likely for this reason that Plaintiffs appear to have given up on defending any claims based on the alleged transfer of information shown in these screen shots and focus almost entirely in their response on "session replay code" (dkt. 40, pp. 2, 4, 8), of which they have conveniently

---

[1] Plaintiffs inexplicably summarize the holding in *Nienaber* as "dismissing plaintiff's claims for failure to allege that she used the defendant's secure portal" when, in reality, the plaintiff alleged that she used the patient portal but the court held that she "[could ]not maintain her theory of the case as to the MyChart website absent concrete factual allegations that her Private Information entered on Defendant's Private Patient Portal was disclosed." 733 F. Supp. 3d 1072, 1083.

3

included no screenshots. Plaintiffs argue that, because they have alleged Humana used session replay code and because they have alleged session replay code "logs and tracks everything a user does on a webpage," the Court can infer that Plaintiffs' IIHI was intercepted. (*Id*., pp. 2, 11.) But, again, Plaintiffs have simply not alleged enough regarding their own interactions with Humana's website and what information, specifically, the session replay code intercepts or how. While they allege that it "logs and tracks everything a user does on a webpage, including mouse movements, clicks, scrolls, and taps, and *can* actually track every single key stroke, creating a complete reproduction of the user's visit to the website" (dkt. 32, ¶ 121, emphasis added), Plaintiffs have not alleged that any of the Plaintiffs had his or her keystrokes tracked or his or her browsing session reproduced in whole by session replay code. (*See, e.g.*, dkt. 32, ¶¶ 41-45.)

Moreover, Plaintiffs have not alleged anything with respect to what buttons (if any) they allegedly clicked, what words (if any) they allegedly typed, or what specific pages they viewed. (Dkt. 32, ¶¶ 41-45.) And while Plaintiffs allege that session replay code would track buttons clicked or words typed in the general sense, Plaintiffs allege nothing with respect to what information is allegedly intercepted regarding the information they claim to have viewed on Humana's website: there is no allegation, for instance, that any sensitive information in the explanations of benefits or individual claims they claim to have viewed were reproduced or viewed by any third party. Without this information about what Plaintiffs did and what information third parties actually received, neither Humana nor the Court can know what specific information Plaintiffs claim was intercepted. Plaintiffs do not state a claim by simply describing what these technologies are capable of: they must plausibly allege what specific information about Plaintiffs was actually intercepted through this technology. *See Wright v. TrueCare Property Holdings, LLC*, 2025 WL 3248749, *2 (S.D. Cal. Nov. 21, 2025).

4

In overdramatic fashion, Plaintiffs argue that it is unreasonable to require them to plead every thing they ever typed into Humana's website. (Dkt. 40, pp. 8, 12.) But Humana does not ask Plaintiffs to identify every medical condition from which they suffered or exactly what they typed *every time* they used the website; just that they describe the information they claim was transferred, and how, on *just one occasion* in order to provide the required factual support for their claims. "[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory . . . ." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

Regardless of how long Plaintiffs' Complaint is or how much detail it provides about the way website tracking technologies can work, without specific allegations regarding what of Plaintiffs' information was actually intercepted, Plaintiffs' claims must fail.

### B.    *Plaintiffs Have Not Alleged That Any of the Information in Question is Identifiable.*

Further, in order for the information in question to constitute IIHI, Plaintiffs must plausibly allege that it is *identifiable*. They have not done so.

Plaintiffs first suggest that they have sufficiently plead identifiability by pointing to paragraphs 226, 240, and 241 of the Complaint, which allege that each "insured" who visits the a particular page on the portal "is assigned a unique identifier via the installation of [cookies], allowing Defendant and Third-Party Vendors to persistently identify and monitor the insured across sessions or pages, and to build a behavioral profile with a specific audience, a current visit ID, and an ID from past sessions." (Dkt. 40, pp. 3, 14; dkt. 32, ¶¶ 226, 240, 241.) Paragraph 226 is accompanied by Figure 13, reproduced below:

5

While Plaintiffs allege that such "unique identifiers" allow "third party vendors to persistently identify and monitor the insured across sessions or pages," they nowhere allege that this so-called "identifier" can actually identify the user. (*Id.*, *see also* dkt. 32, ¶ 239 (cookies allegedly track users across sessions and across the internet).) In fact, Plaintiffs cite no case in which a "cookie" identifier not associated with a specific user account (like a Facebook ID) was deemed to be identifying information under HIPPA. Also, unlike in other cases on which Plaintiffs rely, Plaintiffs here do not allege that they ever received any targeted advertisements related to the information that was allegedly disclosed. Other courts have relied on allegations that plaintiffs were targeted with advertisements on their Facebook pages as an indication that Facebook did, in fact, associate the information in question with them individually—there are no such allegations here. *See, e.g., Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, *1 (C.D. Cal. Jan. 30, 2025) (plaintiff alleged that "following his use of the Website, [he] started receiving targeted advertisements related to his specific medical conditions on his Facebook or Instagram accounts.").

Next, in their response, Plaintiffs point to their allegations that "ForeSee's tools enable real-time tracking of user interactions across the Website, including personally identifiable information like name, email address, and phone number." (Dkt. 40, p.14, *citing* dkt. 32, ¶ 247.) Even if ForeSee is <u>capable</u> of tracking information "like name, email address, and phone number,"

6

326476583v.3

none of the Plaintiffs alleged that he or she entered his or her name, email address, or phone number on any page where the Foresee tool was implemented (*See, e.g.*, dkt. 32, ¶¶ 41-45.)

Plaintiffs further rely on paragraph 181 of their Complaint to suggest they sufficiently pled identifiability (dkt. 40, p. 3, 8), although that paragraph states only that "portal interactions are tied to a specific user's identity" and, therefore, that "data displayed or transmitted often constitutes individually IIHI [sic]." (Dkt. 32, ¶ 181.) But the fact that a particular portal account is tied to a specific person does not mean that the browsing information allegedly intercepted by third parties can be tied to that specific person—indeed, Plaintiffs allege only that such information "often" constitutes IIHI (without alleging that any such information related to any Plaintiffs' use of the portal actually constituted IIHI). (*Id.*)

Finally, Plaintiffs argue that, under their cited case law, a user's IP address is a sufficient identifier under the HIPAA privacy rule. (Dkt 40, p. 15.)[2] However, Plaintiffs do not allege that their IP addresses were disclosed to any third party, so the cases on which they rely are inapposite. (*See, generally*, dkt. 32.) And the North District of Texas's decision in *Becerra* vacating the Department of Health and Human Services' guidance regarding data from health care providers' unauthenticated websites should preclude any argument that the combination of an IP address or alleged "cookie" identifier, plus information from Humana's public-facing website, constitutes IIHI under HIPAA. *See Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 794 (N.D. Tex. 2024).

### C.    *Plaintiffs Have Not Sufficiently Alleged that the Information in Question is Related to Any Plaintiff's Health Conditions or Treatment.*

In response to Humana's observation that "patient status" is not revealed by the fact a person logged into or was using Humana's portal, Plaintiffs now claim in their response that one's

---

[2] The *Shah* decision relied upon by Plaintiffs, notably, did not involve any allegations regarding a HIPAA violation, despite that Plaintiffs represented it in their response as a decision in which the court "considered HIPAA." (Dkt. 40, p. 15.)

status as an insured—even assuming that logging into Humana's portal would identify that person as being insured by Humana, which Humana does not concede—is also protected information under HIPAA. (Dkt. 40, p. 13.) However, Plaintiffs cite no authority that has interpreted the definition of IIHI broadly enough to encompass one's status as merely an insured. The sole case Plaintiffs cite for this proposition—*Theys v. Dental Intelligence, Inc.*—did not hold that insured status is IIHI. In that case, the plaintiffs alleged that they entered certain information, including "the name of the clinic that she scheduled her appointment with, the name of her treating medical provider, the reason for her appointment, her phone number, and her insurance provider," into an appointment scheduling portal. 2026 WL 636743, *2 (N.D. Ill. Mar. 6, 2026). The court held that the plaintiffs had plausibly alleged the disclosure of IIHI and analogized to other cases that involved disclosure of patient status and appointment scheduling information. *Id.* at *13. The court never addressed whether the name of plaintiff's insurance provider, alone, would constitute IIHI.

Plaintiffs also cite to the definition of "transaction" under 45 C.F.R. § 160.103 to suggest that information about "[e]nrollment and disenrollment in a health plan" can be shared only "between two parties to carry out financial or administrative activities related to health care" (dkt. 40, pp. 13-14), but that is not what the cited section provides. The cited section merely defines "transaction" as "the transmission of information between two parties to carry out financial or administrative activities related to health care" and lists several examples of information transmissions that would constitute "transactions," including "enrollment or disenrollment from a health plan." 45 C.F.R. § 160.103. "Transaction" is used in defining covered entities, but "transactions" are not defined as IIHI. Moreover, even if the fact that a person is insured were covered under the HIPAA privacy rule, it would constitute IIHI only if it was accompanied by information identifying the insured which, again, Plaintiffs have not alleged.

326476583v.3

There are, as Plaintiffs note, cases in which courts have found that the use of website tracking technologies results in the disclosure of IIHI (dkt. 40, p. 12); however, those cases are distinguishable from the present case because they involved specific allegations of actual treatment and appointment information being disclosed to third parties. For instance, the court in *Kane v. Univ. of Rochester*, 2024 WL 1178340, at *5 (W.D.N.Y. Mar. 19, 2024) held that the plaintiffs had sufficiently alleged the disclosure of IIHI where tracking technologies were installed on the defendant's patient portal and allegedly resulted in the disclosure of information about the plaintiffs' attempt to schedule an appointment with a physician, along with their IP addresses and Facebook IDs.[3] Plaintiffs here have not alleged the disclosure of any specific health information being transferred.

Plaintiffs have also failed entirely to address Humana's argument that none of the material Plaintiffs allegedly viewed on Humana's public website can constitute IIHI because, under the law, viewing information on publicly available websites does not indicate anything about the user's health. (Dkt. 36, pp. 13-14.)

## II.    PLAINTIFFS HAVE OTHERWISE NOT ALLEGED FACTS SUFFICIENT TO INVOKE THE CRIME-TORT EXCEPTION TO THE FWA.

First, Plaintiffs' suggestion that "whether Defendant was a 'party' to Plaintiffs' communications with Defendant's Website has no bearing on Defendant's liability under the FWA"

---

[3] *See also M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *1 (D. Or. Aug. 28, 2024) (FWA claim survived dismissal where plaintiffs alleged that defendant disclosed information about appointments they scheduled, among other things); *Vriezen v. Infinite Health Collaborative, P.A.*, 2025 WL 2992204, at *5 (D. Minn. Sept. 30, 2025) (same where plaintiff used the website to make an appointment and "[t]he Amended Complaint includes a screenshot of [defendant]'s appointment-request form and its tracking of user data, including name, phone number, and email address"); *Theys v. Dental Intelligence, Inc.*, 2026 WL 636743 (N.D. Ill. March 6, 2026) (plaintiffs plausibly alleged the disclosure of IIHI where information disclosed included "requests for appointments, the names of the dental clinics where those appointments were made, the reason for the appointments, [and] the name of the attending medical provider").

9

is patently false. (Dkt. 40, p. 9.) The FWA contains an express exception for interception undertaken by a party to the communication. *See* 18 U.S.C.A. § 2511(2)(d). The crime-tort exception is, in turn, an exception to the party exception. (*Id.*) Therefore, unless Plaintiffs plausibly plead facts that would bring Humana within that crime-tort exception, Humana's status as a party to the communication is, in fact, dispositive.

### A.    *Plaintiffs Have Not Alleged a Violation of HIPAA.*

The crime-tort exception to the one-party consent rule does not apply in the present case, first, because the information in question is not IIHI and is not protected under the HIPAA privacy rule, as discussed at length above.

### B.    *Federal Courts Generally Recognize an "Independent Act" Requirement and Plaintiffs Have Failed to Allege an Independent Act.*

Plaintiffs next argue that there is no "independent act" requirement as part of the crime-tort exception (dkt. 40, pp. 15-17), despite that multiple federal courts of appeal have held that there is. *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *Sussman v. American Broadcasting Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 145 (3d Cir. 2015). While Plaintiffs dismiss these as "out-of-Circuit cases" (dkt. 40, p. 15), they constitute persuasive authority from federal courts of appeal interpreting a federal statute. *See Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 553, n. 6 (6th Cir. 2007) (" . . . while analogous decisions from our sister circuits are not binding, we have repeatedly recognized their persuasive authority."). And Plaintiffs cite no case, much less one in this Circuit, holding that there is no such independent act requirement.

To that end, Plaintiffs have not satisfied the independent act requirement. The question is not, as Plaintiffs suggest, whether the alleged conduct violated both HIPAA and, separately, the FWA: the question is whether the alleged crime or tort was an act separate from the alleged act of

10

326476583v.3

interception. *See Caro*, 618 F.3d at 99-100 ("[A] simultaneous tort arising from the act of recording itself is insufficient."). Here there is not, as Plaintiffs now claim, a distinct disclosure of information that constitutes an act separate and apart from the interception (dkt. 40, p. 16); Plaintiffs allege that the interception itself is the HIPAA violation. (Dkt. 32, ¶¶ 2, 10-11, 15, 17-18.) Therefore, there is no separate act, and Plaintiff cannot invoke the crime-tort exception. *See, e.g.*, *Okash v. Essentia Health*, 2024 WL 1285779, *4 (D. Minn. Mar. 26, 2024); *Doe v. Kaiser Foundation Health Plan, Inc.*, 2024 WL 1589982, *10 (N.D. Cal. April 11, 2024); *Nienaber*, 733 F. Supp. 3d at 1095.

### C. *Plaintiffs Have Not Alleged that Humana Installed Tracking Technologies for the Purpose of Violating HIPAA.*

The case law regarding whether a plaintiff must plead that a defendant acted with the specific intent to commit a crime or tort in order to state a FWA claim is, admittedly, mixed, but Plaintiffs' flippant dismissal of Humana's argument as "baseless" and "wrong" simply ignores the body of case law that exists supporting Humana's argument that Plaintiffs must plead an intentional criminal or tortious act in order to state a FWA claim. (Dkt. 40, pp. 9-10.) In fact, there are several courts across the country that have dismissed FWA claims under the one-party consent rule where the plaintiff alleged that the data collection at issue was undertaken for commercial purposes, rather than criminal ones. *See, e.g., Martinez v. Mentavi, Inc.*, 2025 WL 3780427, *3 (W.D. Mich. Oct. 9, 2025); *Doe v. Genesis Health System*, 2025 WL 1000192, *9 (C.D. Ill. Mar. 18, 2025); *Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732, *3 (D. Mass. June 24, 2025); *In re Meta Pixel Healthcare Litigation*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("Multiple courts in this district have found that the crime-tort exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously.").

11

However, even if the Court disagrees with those cases holding that Plaintiffs must plead an intentional violation of HIPAA in order to state a claim, Plaintiffs have still failed to plead facts sufficient to invoke the crime-tort exception for the additional reasons set forth above.

## III.   PLAINTIFFS HAVE FAILED TO ALLEGE THE INTERCEPTION OF THE CONTENT OF THEIR COMMUNICATIONS

Plaintiffs' FWA claim is insufficiently pled, not only because Plaintiffs have not pled facts sufficient to bring their claim within the crime-tort exception based on an alleged violation of HIPAA, but also because they have failed to allege that the contents of their own communications—as opposed to a hypothetical users' communications—were allegedly intercepted by a third party. Again, Plaintiffs allege that under certain circumstances and on certain webpages, search terms entered by a user may be reproduced—albeit in a convoluted and nearly unrecognizable form—in metadata transferred from Humana's website to Adobe. (Dkt. 32, ¶¶ 233-238.) But Plaintiffs have still failed to allege that any of them had *their* search terms intercepted (or that they even typed in any search terms, let alone on a webpage where Adobe's tracking technologies were implemented). (*See* dkt. 32, ¶¶ 41-45.)

Plaintiffs rely heavily on *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016) to suggest that they have sufficiently pled the interception of content (dkt. 40, pp. 1, 6-9, 12, 20), although *Luis* is distinguishable in several important respects. First, *Luis* did not involve the kinds of tracking technologies at issue here—it involved the defendant's alleged use of a computer program that copied and reproduced the plaintiff's communications with the defendant's wife, including the full text of emails and instant messages sent between them. *Id*. at 624. There was no dispute in that case that the computer program in question intercepted the contents of their communications—the actual text of messages the plaintiff sent—as opposed to metadata about the communications; the dispute in that case was whether the plaintiff had sufficiently alleged a FWA claim against the

12

manufacturer of the computer program that the defendant husband had installed on his wife's computer. *Id*. at 625. It is inapposite to the issues raised in the present case.

Plaintiffs attempt to invoke *Luis*, though, because they have generally alleged that "session replay code" can intercept every key stroke and reproduce every interaction a user engages in on Humana's website. (Dkt. 40, pp. 6-7.) However, as discussed above, general allegations regarding what the tracking technologies are capable of cannot substitute for allegations regarding Plaintiffs' own experiences on the website. Even assuming that session replay code on Humana's website intercepted every key stroke and every word Plaintiffs typed in (which has not been alleged), none of the Plaintiffs alleges that he or she ever typed anything into the website. (Dkt. 32, ¶¶ 41-45.)

Plaintiffs here do not allege what information of theirs they claim was intercepted and so they have not sufficiently pled that such unspecified information constitutes "content."

## IV.    PLAINTIFFS HAVE NOT ALLEGED A BREACH OF FIDUCIARY DUTY

Because Plaintiffs' breach of fiduciary duty claim is based entirely on the alleged duty of Humana to maintain the confidentiality of Plaintiffs' IIHI (dkt. 32, ¶¶ 404-410), the fact that Plaintiffs have not sufficiently alleged Humana caused the disclosure of their IIHI is dispositive of this claim.

## V.    PLAINTIFFS CANNOT ALLEGE INTRUSION UPON SECLUSION BECAUSE PLAINTIFFS CAN HAVE NO EXPECTATION OF PRIVACY IN THE INFORMATION IN QUESTION.

Because Plaintiffs fail to plead the actual sharing or transfer of confidential health information, the information actually in question is neither private nor sensitive, and therefore, Plaintiffs cannot claim to have any expectation of privacy in it or to have been highly offended by use of tracking technologies that collected what amounts to their routine web browsing data.

Plaintiffs' reliance on Humana's Notice of Privacy Practices to argue that Humana made "inaccurate representations" regarding its data collection practices and to establish a claimed

expectation of privacy in their browsing data is misplaced because the language upon which Plaintiffs rely has no application to the information in question. (Dkt. 40, p. 4; dkt. 32, ¶ 274). As Humana explains in its motion (dkt. 36, p. 23, n. 10), its Notice of Privacy Practices applies only to personal health information protected under the HIPAA privacy rule and, for all of the reasons discussed above, the information in question is not IIHI, nor is it protected under HIPAA. And Plaintiffs further rely on Humana's Website Privacy Policy but, as also discussed in Humana's motion, this policy expressly describes the kinds of tracking technologies Humana uses, including "Advertising Cookies" that "enable third party ad networks to recognize a unique cookie on [users'] computer or mobile device" and collect information that "may be used for the purpose of targeting advertisements on [Humana's] website and third party sites based on those interests." (*Id.*)

Plaintiffs' reliance on *Luis v. Zang* is also misplaced because, again, that case involved the use of a computer program that intercepted and reproduced the plaintiff's emails and text messages in whole. 833 F.3d 619. These are the types of communications in which one could have an expectation of privacy; however, they are very different than the kinds of metadata at issue here. *See Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 72 (W.D. Pa. 2023).

Finally, Plaintiffs' grievance is with the alleged transmission of their information to third parties (dkt. 40, p. 21)—not any intrusion by Humana into a private realm—so they cannot claim any intrusion upon their seclusion by an entity that was a party to the alleged communication in question. *See Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2023); *Hartley v. University of Chicago Medical Center*, 2023 WL 7386060, * (N.D. Ill. Nov. 8, 2023). *Smith v. Bob Smith Chevrolet, Inc.*, relied upon by Plaintiffs (dkt. 40, p. 21), is inapposite because it involved a car dealership's improper accessing of a credit report, not a communication directly between the plaintiff and the defendant. 275 F. Supp. 2d 808 (W.D. Ky. 2003).

14

## VI.    PLAINTIFFS CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT BECAUSE PLAINTIFFS DO NOT CLAIM TO HAVE SUFFERED ANY HARM OR LOSS.

Plaintiffs have not alleged that they experienced any loss or harm because they have not pled facts sufficient to establish that any of their information was intercepted by a third party, as discussed at length above. The mere fact that Humana allegedly gained something by using Plaintiffs' data is not sufficient to state a claim for unjust enrichment: Plaintiffs must show that this gain came at their expense, i.e., that they suffered a loss or a harm. *Furlong Dev. Co., LLC v. Georgetown–Scott Cnty. Planning and Zoning Comm.*, 504 S.W.3d 34, 39-40 (Ky. 2016); *Harms v. Chase Home Fin., LLC*, 552 S.W.3d 516, 521 (Ky. App. 2018). Plaintiffs further have not sufficiently alleged that Humana wrongfully intercepted their data such that it would be unjust for Humana to retain any alleged benefit because Humana fully disclosed the use of the tracking technologies in question. (Dkt. 36, p. 23, n. 10.)[4]

## VII.    CONCLUSION

WHEREFORE, Defendant Humana Inc. respectfully requests an Order dismissing Plaintiffs' First Amended Class Action Complaint for failure to state a claim, and for any other relief the Court deems proper.

Dated: June 15, 2026

Respectfully submitted,

HUMANA INC.

By: _/s/ Michael P. Abate_
One of its Attorneys

---

[4] Defendant does not "concede[] that, if the information Plaintiffs allege Defendant intercepted is IIHI within the meaning of HIPAA." (Dkt. 40, p. 24.) Even if the information in question could be deemed IIHI (it cannot), Plaintiffs would still need to allege that the realization of the value of any such information came at their expense and that it would be unjust for Humana to retain any alleged benefit, which they have not done.

15

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was e-filed, and a true and correct copy was electronically served on all counsel of record via the Court's CM/ECF system.


*/s/Michael P. Abate*
Michael P. Abate

326476583v.3